### JONES, ET AL. v. SCOTT.

1. No certain rule can be laid down, as to the quantity or quality of the preliminary proof, necessary to be made, to authorize the introduction of secondary evidence of the contents of a lost instrument. But it is, in general, true, that much stricter proof will be required of the loss, and a more rigid search exacted, in a case where any motive for the suppression of the instrument may exist, than will be required, when, from the circumstances, no fraud can be presumed—as where a written copy exists, made under such circumstances, as to preclude the supposition, that the copy was fraudulently made.

2. When a lawyer employed to bring a suit, testified that he had made a copy of a bill of lading on a writ, in a suit he was employed to bring; that he had made diligent search for it among his papers, and could not find it, and was under the impression he had returned it to Sims & Scott, the plaintiffs—and the surviving partner of Sims & Scott, also testified, that he had searched for it among the papers of the firm, and could not find it, and had also examined the papers of the deceased partner, though for a different purpose, without seeing it—held, sufficient to authorize the introduction of secondary evidence, of the contents of the lost paper.

3. A residuary legatee cannot be a witness in a suit, the result of which may augment or diminish the fund in which he may participate.

4. All depositions are taken *de bene esse*, and although a witness was competent when his deposition was taken, it cannot be read in evidence, if he is incompetent at the time of the trial.

5. J. & H. in Mobile, and S. & S. in Tuscaloosa, were joint owners of a steamboat, and had been engaged in running it as a general freighter, between Mobile and Tuscaloosa, S. & S. without the knowledge of J. & H., sold their interest to H. & D., who were the former Captain and Clerk of the boat, and shipped on board the boat, one hundred bales of cotton for Mobile. On the downward passage, the boat was sunk, and the cotton lost—held, that although a stranger could recover from J. & H. for a loss caused by negligence or want of skill, notwithstanding the sale of the interest of S. & S., that S. & S. could not, without proof, that J. & H. either expressly or by implication, consented to run the boat for freight, in partnership with the new joint owners.

6. One joint owner of a steamboat may sell his interest in the boat, without the assent of the other proprietors, and the purchaser will become a tenant in common with the other joint owners.

Error to the Circuit Court of Tuscaloosa.

THIS action was brought originally by Sims & Scott, and now carried on by Scott, as surviving partner, against the defendants, to recover the value of one hundred bales of cotton, lost on the steamboat Warrior.

The plaintiff obtained judgment, and the case is brought here on a bill of exceptions. The plaintiff, to prove the loss and the contents of a bill of lading of the cotton, offered to read the deposition of Aaron Reedy, taken some years since, on the ground that he lived more than one hundred miles from the place of the trial, where he still resides. Mr. Reedy has married the daughter of Mr. Sims, the deceased partner of the plaintiff. By the will of Mr. Sims, the wife of Mr. Reedy is a legatee; he has also a legacy given him by the will, and is a residuary legatee. The defendants moved to exclude the deposition, on the ground that Reedy was interested in the event of the cause, but the Court permitted it to be read, to which the plaintiff excepted.

As a ground for introducing secondary evidence, of the contents of the bill of lading, the plaintiff proved, by the deposition of Reedy, that he once had possession of the paper, to bring this suit; that he made a copy of it on the back of the writ, that it is lost or mislaid, and that after diligent search, he cannot find it—that he was satisfied he made a true copy on the writ; the bill of lading was signed by J. W. Donaldson, the clerk of the boat. It was also proved, that it was customary to make three bills of lading, one of which was kept by the boat, one by the consignor, and one sent to the consignee. The deposition of McLoskey, one of the consignees, was read, and proved that he did not know that his house had ever received a bill of lading for this cotton; that there had been one bill of lading lost, which they had not been able to find. The plaintiff proved, that he had examined the papers of Sims & Scott, and could not find the bill of lading; and had looked over the private papers of Sims, for another purpose, but did not see it. Notice was given the defendants, to produce the copy in their possession. Upon this testimony, the Court permitted secondary evidence to be given of the contents of the lost paper, to which defendants excepted.

It was also proved, that the boat had formerly been owned by the defendants, Jones & Horner, and the plaintiffs, Sims & Scott; and that the boat had been run by them on joint account, for freight. These were all wealthy men, the former living in Mobile, and the latter in Tuscaloosa, at which time,

the defendant, Hammond, was captain, and defendant, Donaldson, clerk of the boat. It was also proved, that during the Summer and Fall of 1828, the boat lay at Tuscaloosa, and was lost on her second trip down the river. Articles of agreement, entered into between Sims & Scott, and Donaldson & Hammond, dated, 9th September, 1828, were also offered in evidence, by the defendant, by which the former sold to the latter, one half the boat; but there was no proof that the defendants, Jones & Horner, knew of the sale, and proof was offered, conducing to shew, that they were not apprized of it.

Upon this evidence, the Court charged the jury, that if they believed from the evidence, that the cotton was shipped under the agreement between Hammond & Donaldson, and Sims & Scott, the freight to go towards the payment of the debt incurred by the former, in the purchase of Sims & Scott's interest in the boat; that then the defendants, Jones & Horner, not having notice, and assenting thereto, were not responsible for the loss of the cotton. The defendant's counsel moved the Court to charge the jury, that if they believed from the evidence, that the defendants, Jones & Horner, had no notice of the sale from Sims & Scott, to Hammond & Donaldson, before the loss, that then they should find for the defendants, Jones & Horner, which charge the Court refused, to which the defendant excepted, and now assigns as error, the questions of law arising out of the bill of exceptions.

ELLIS & PECK, for plaintiffs in error.
J. L. MARTIN, contra.

ORMOND, J.—The questions presented on this record, are—First, was the preliminary evidence offered by the plaintiff, sufficient to authorize the introduction of secondary evidence, of the contents of the bill of lading. Second—had the witness, Reedy, such an interest, as would prevent him from testifying in the cause. Third, can the defendants, Jones & Horner, be made liable, as partners, at the suit of the plaintiffs, without notice that the plaintiffs had withdrawn from the partnership.

1. No fixed rule can be laid down, as to the quantity or quality of the proof, necessary to be adduced, to authorize se-

Jones, *et al.* v. Scott.

condary evidence of the contents of an instrument, alledged to be lost or mislaid. It is, however, true, that, in general, examination and enquiry must be made, where the instrument was last known to be, and that when the presumption can arise, that the paper may be improperly withheld, much stricter proof will be required of the loss, and a more rigid search exacted, than in a case where no such presumption can be made. As where the lost instrument is evidence of a fact, capable of being proved by extrinsic testimony, and especially, where a written copy exists, made under such circumstances, as to render it highly improbable, that any fraud could be intended.

Tried by these rules, it will be found, that the preliminary proof offered in this case was ample. The fact recited in the bill of lading, was one of notoriety, and susceptible of certain proof, and the copy made of the original, on the writ, at a time when it must have been presumed, that the other copies were in existence, in addition to the publicity thus given to it, affords convincing proof of its correctness, and by the absence of all motive, precludes the idea that any fraud could be intended, by the suppression of the original. The proof of the loss, by the person into whose hands it was last traced, is complete, besides additional proof from those into whose hands it might have come. The evidence was, therefore, sufficient to authorize proof of its contents. [See the cases of Mordecai v. Beale, 8 Porter, 529, and Swift v. Fitzhugh, 9 Porter, 39.]

2. The question of the interest of Mr. Reedy, is one of some difficulty. His deposition was taken some years since, and when he was competent, under the act allowing the depositions of witnesses, residing more than one hundred miles from the place of trial, to be taken, where he still resides. His supposed interest in the suit, arises from his being a legatee of Sims, the former partner of the plaintiff, Scott, the object of this suit being to recover a partnership demand.

The counsel for the plaintiff in error, contended, that the witness is directly interested in the event of the suit, being not only a specific, but also residuary legatee, under the will of his father-in-law. That if this judgment is recovered, it will either discharge so much of the partnership debts, and thereby re-

lieve the estate of Sims from contribution, or, if the partnership is not in debt, will increase the estate by the amount of one half the recovery. While, on the other hand, it is maintained, that the interest of Reedy is altogether contingent; and it is likened to the case of a creditor of a deceased person, called on by an executor, to testify in a suit, to recover a debt due the deceased.

Courts of justice are more liberal now, than formerly, in relation to the interest which will disqualify a witness; but the rule has never been so far relaxed, as to permit one, directly interested in the event of the suit, to be a witness. If the testimony of the witness, will be to create or increase a fund, in which he is entitled to participate, or to prevent its diminution, he is incompetent. It is very clear, that such is the case here. If the partnership debts are not paid, then the estate of the deceased partner, may be called on to contribute, which the recovery of the judgment in this case would prevent, *pro tanto.* So, whether the accounts between the partners are settled or not, and whether, on settlement, the balance is in favor of, or against Sims, in either case, the recovery of this judgment would augment or diminish, as the case may be, a fund in which the witness has an interest; he is, therefore, incompetent. In the case of a creditor, called on to testify in favor of the estate indebted to him, there is no certain and direct interest, because it is contingent, whether he may ever be able to obtain his claim out of the estate; but it is not necessary to decide this question.

The precise point was determined by Lord Ellenborough, in Baker v. Tyrrwhitt, [4 Camp. 27] where a residuary legatee was called as a witness by the executrix, in an action to recover a debt due the estate; and although he released all claim to the debt, yet, as the costs would diminish the fund in which he was entitled to participate, he was excluded.

The case of the Bank of the State of Alabama v. McDade, [4 Porter, 252] cannot be distinguished in principle from this. [See also, Stebbins v. Sackell, 6 Conn. Rep. 262. Owens v. Collinson, 3 Gill and Johnson, 25.]

It is strongly put, by the counsel for the defendant in error, that, as the witness was competent when his deposition was

taken, and that if true then, it must be true now, that, therefore, it should be admitted. The rule which excludes an interested witness, is not founded on the supposition, that he may not speak the truth, but that interest exerts such an influence over the majority of mankind, as to make it unsafe to rely on evidence derived from such a source. The rule, at law, requires, that the witness should be disinterested at the time of the trial. By our law, all depositions are taken, *de bene esse*, and, therefore, though taken whilst the witness was competent, cannot be read on the trial, unless the witness, if present, could give testimony before the jury. In contemplation of law, the deposition is the witness.

The rule appears to be different in the English Chancery Courts, [2 Vernon, 699, 2 Atkins, 615.] But at law, a deposition cannot be read, if the witness became interested after it was taken, as was resolved by all the Judges, in Tilly's case, [1 Salkeld, 286. See also, 1 Strange, 101.] The same rule was laid down by the Supreme Court of Pennsylvania, in the case of Reid v. McMahon, [4 Yeate's Reports, 512.]

In this State, all depositions are taken, *de bene esse*, therefore, the right to take the deposition, and the competency of the witness, must exist at the time of the trial of the cause. Although the witness still resides more than one hundred miles from the place of trial, his deposition could not now be taken, and therefore cannot now be read.

3. Sims & Scott and Jones & Horner, were joint owners of the steamboat Warrior, the former living in Tuscaloosa, the latter in Mobile. This joint ownership did not necessarily constitute a partnership, nor subject them to the consequences attending that relation, further than for repairs done to the vessel. But they were also engaged in running the boat for freight; this was a *quasi* partnership, and rendered them liable jointly and severally, to all persons who freighted property on the boat.

Sims & Scott sold out their interest in the boat, to two persons of the name of Hammond and Donaldson, who had been, under the former ownership, captain and clerk of the boat. As joint owners of a vessel are tenants in common, there can be no doubt they had the right to do so. After the purchase by them,

Hammond & Donaldson employed the boat as a general freighter, between Tuscaloosa and Mobile, whether with the consent or knowledge of Jones & Horner, the remaining joint owners, does not appear.

On the second trip down the river, she was lost. Sims & Scott having shipped one hundred bales of cotton on her, and the precise question now is, whether Jones & Horner are liable to Sims & Scott, for the loss of the cotton, without knowledge of the sale by Sims & Scott, to Hammond & Donaldson, of their interest in the boat.

As it respects strangers, and the public in general, it has been decided by this Court, in the case of Pitcher v. Jones, *et als.* [3 Stew. & Porter, 136] that they are liable. Their liability results from the fact, that they permitted the vessel to be employed as a general freighter, and were entitled to her earnings, or to such part of them as attached on their interest in the vessel. The public have no means of knowing who the partners are, or what arrangements they may make among themselves, and it would be disastrous to the community, if the right to recover of one person, who was navigating the vessel for freight, could be defeated by some secret act of another partner, by which he withdrew from the partnership. The liability to the public does not arise from any agreement among themselves, but because *all* permit the vessel to be employed as a general freighter. Therefore, although the withdrawal of one partner, without the knowledge of the rest, would put an end to that particular partnership, it would not affect the public right to recover of those who had not withdrawn, unless, indeed, by such act, the remaining partners were disseized. Whether, in such a case, where insolvent persons had been introduced as part owners, without the knowledge of the rest, and a loss had ensued from their running the boat on joint account, the remaining partners might not call on the former, is a question not necessary to be discussed at this time.

But we are clearly of opinion, that Jones & Horner are not responsible to Sims & Scott, until they had notice, that the latter had withdrawn from the partnership. In general, it may be stated, that the death or withdrawal of one of the partners from the concern, would dissolve the partnership; and it is too

clear for argument, that the purchase of the interest of one partner in a concern, will not, *ipso facto,* make the purchaser a partner. To constitute that relation, the consent of those concerned, either express or implied, is absolutely necessary. By the purchase of the interest of Sims & Scott, therefore, Hammond & Donaldson did not become partners of Jones & Horner, even if a partnership had formerly existed between the original parties in the *boat;* but were merely tenants in common with Jones & Horner. We have seen that, on grounds of public policy, the transaction, which put an end to the former partnership, will not affect strangers, who have a right to look to those, who, in point of fact, are engaged in running the boat, and entitled to share in her earnings; but the reason of the rule fails when applied to a case like the present. The business of freighting on steam boats is one of the most hazardous kind; and it was the duty of Sims & Scott, before they shipped their property on board the boat, to enquire, whether Jones & Horner were willing to engage in partnership with the new part owners, in the business of freighting. If, in point of fact, they had no knowledge of the sale to Hammond & Donaldson, although, for the reasons given, responsible to strangers, it would be the extremity of injustice, to hold them liable to those, who, by their own act, had introduced into the ownership of the boat, persons not able to respond in damages, for any loss caused by their negligence, or want of skill. It would, in effect, be to create a new partnership, without the consent of those interested.

We are not to be understood, as saying, that express notice should have been given of the sale, to Jones & Horner, or that the plaintiff should be required to prove an express assent, on the part of Jones & Horner, to run the boat in partnership with Hammond & Donaldson. If they knew of the sale, it must be presumed, that they consented to engage in the business of freighting with the new part owners, unless they, prove an express dissent, and that Hammond & Donaldson were running the boat on their own account. The Court, therefore, erred in charging the jury, that Jones & Horner

were liable to Sims & Scott, without notice of the sale to Hammond & Donaldson.

The judgment must be reversed, and the cause remanded, for further proceedings.