# YARBOROUGH v. MOSS.

1. It is error to exclude the declarations made by a person in explanation of the delivery of chattels, when an inference unfavorable to him is sought to be drawn from the fact of delivery. The declarations made at the time are a part of the transaction, and proper to be given in evidence as a part of the *res gestae*. Nor is the error cured by allowing the witness to state generally, that the party asserted a title to the chattels.

2. Since the passage of the act of 1845, (p. 136, § 2,) the defendant in execution cannot be received as a witness in a trial of the right of property, although the suit was in progress, and the deposition taken before the passage of the act.

3. When property levied on by an attachment is claimed after a *venditioni exponas* has come to the sheriff's hands, the suit is equivalent in all respects to one founded on a *fi. fa.*

4. The attachment and *venditioni exponas* are evidence of the indebtedness of the defendant, and of the levy.

5. When the question was as to the possession of the claimant and the defendant in execution, when the levy was made, the property being in the hands of the sheriff, under previous levies upon other executions, the fact of such levies may be proved, without producing the executions.

6. The notoriety of a sale in the neighborhod is nothing more than hearsay testimony, and therefore incompetent, if no special circumstances appear in the case.

7. The objection that a question is leading, ought to be specific, and quere? whether under any circumstances, the allowance is matter of reversal. When a witness admitted the recovery of a judgment for rent, held, that he might answer, that he was prepared at the trial to prove it was due to another, but that his evidence was excluded.

8. A charge which assumes a fact as proved, which does not appear, may be properly refused, although that fact is immaterial, and if the proper charge is subsequently given, the refusal will be placed to the form and not the substance of the charge.

9. When no question of adverse title is raised, a charge upon that branch may be properly refused, and when the claimant makes title under the defendant in execution, the only question is as to the *bona fides* of the transaction.

Writ of Error to the Circuit Court of Tallapoosa.

CLAIM interposed by Yarborough to certain slaves attached as the property of one Thomas, at the suit of Moss.

At the trial, there was evidence conducing to show, the slaves were in the possession of the sheriff when he levied Moss' attachment, and the plaintiff offered to prove, that the sheriff then held them by virtue of a previous levy, under sundry writs of *fi. fa.* which writs were not produced. The court admitted this evidence against the objection of the claimant.

The evidence conducing to show, that when the *fi. fas.* were levied, the claimant delivered the slaves to the sheriff; the claimant then offered to prove what he said at the time of that delivery, to explain the act, and show it was no waiver of his right or claim. The court rejected the proof, but allowed the witness to state that the claimant then set up a title to the slaves.

The claimant having first declared his intention to offer evidence, during the progress of the trial, of a sale of the slaves to him, by defendant in attachment, previous to the levy, offered to prove, by his cross-examination of the plaintiff's witnesses, the general notoriety of the sale in the neighborhood, previous to the time of the levy. This was rejected.

The claimant offered the deposition of the defendant in attachment, proving the sale, &c. regularly taken previous to the 25th of January, 1845. This was rejected as incompetent under the act of that date.

It was in proof, that the defendant in attachment, with his wife and five children, continued to reside on the plantation, where the slaves worked after the delivery of the deed, by which slaves and plantation were conveyed to the claimant, which was dated in March, 1842; the claimant resided in the same house, and was a single man. These persons continued thus to reside for some months after the date of the deed. The evidence which related to the possession and control of the slaves was conflicting. In this connection the claimant offered to prove, that the defendant in execution, after the sale, and before the levy, when he was living on the said premises, admitted he was remaining there with his family, as boarders with the claimant. This proof was rejected.

The plaintiff proved, that the claimant was the overseer

for the defendant in attachment, during the years 1841 and 1842, but the proof was questionable if he was so at the time of the levy; the attachment was given in evidence returnable to fall term, 1842, and recited the affidavit of indebtedness.    The plaintiff also offered to read to the jury a *vendi-tioni exponas* issued on the 7th June, 1843, requiring the sheriff to expose the slaves to sale, to make therefrom a sum recited as having been recovered by the plaintiff from the defendant in attachment, on the 17th April, 1843. There was no other proof of the indebtedness, but there was other evidence, conducing to show the defendant in attachment was indebted to others, at and previous to the conveyance.    There was also evidence conducing to show, the claimant was in possession of the property at the time of the levy, under his prior purchase. The main question before the jury was, whether the deed set up by the claimant was fraudulent.    On this state of proof, the claimant asked the court to instruct the jury—

1. That if they came to the conclusion that claimant and defendant in attachment, were both in the occupation of the premises, and slaves, after the date of the deed, then, in the absence of proof, or if the proof was balanced, the law refers the possession to the title, and if they believed the claimant had the title, that drew to it the possession.    This was given substantially, but with the addition, that if the defendant in attachment continued to control the property, then the possession would be referred to him, and not to the claimant.

2. That the *venditioni exponas* issued on the 7th of June, 1843, in the absence of other proof, was not sufficient evidence of a debt due from the defendant in attachment, to the plaintiff, and that in the absence of proof of such indebtedness, the jury ought to find for the claimant.

3. That the recitals in this writ, that a judgment had been rendered, was no evidence of an existing debt.

4. That if the slaves had been sold to the claimant previous to the levy, and that he was then in possession of them claiming to hold under the conveyance as his own, and adversely to the title and interest of the defendant in attachment, the jury ought to find for the defendant.

5. That if the complainant purchased the property *bona fide*, for a valuable consideration, of the defendant in attachment,

before the process was sued out, and that the claimant was in possession of the slaves, claiming to hold them adversely to the title and interest of the defendant in attachment, and that he forbid the levy when the property was taken out of his possession by the sheriff, then the jury should find for the claimant.

6. If the slaves claimed were in the possession of a stranger to the attachment, claiming them as his own, and adversely to the right and title of the defendant in attachment, then they were not liable to be attached for his debt, and the jury should find for the claimant.

7. That if the slaves claimed were conveyed by the defendant in attachment, in March, 1842, to the claimant, before the attachment was issued, and the latter was in possession under such conveyance, claiming to hold them adversely, and as his own property, then the plaintiff could not attach them, by making affidavit that the defendant in attachment was about fraudulently to dispose of his property to avoid the payment of the debt sued for, and the slaves were not subject to such proceedings.

The court declined to give these charges as asked, but charged generally, that if the purchase was *bona fide*, the jury ought to find for the claimant, but if intended to hinder or delay the creditors of the defendant in attachment, they ought to find the slaves subject to the attachment.

8. The court charged the jury, that if the sale was made with intent to hinder or defraud any of Thomas' creditors at the time it was made, it would be void as to the plaintiff, although at that time he may not have been a creditor.

9. After refusing the second charge asked, and in response to the request, the court charged the jury, that they might look to the attachment and *venditioni exponas* in the case, to ascertain the plaintiff's demand; and having ascertained it, they might, if they considered the claim was interposed for delay, give damages not exceeding fifteen per cent, and that the reference to the papers was confined to the question of damages only.

In the previous progress of the trial, a witness had stated,

49

that in 1843, he took possession of a portion of the plantation embraced in the deed, and his evidence conduced to show, that he held under Thomas. On cross-examination the claimant asked, if he had not recovered a judgment against the witness for rent, which had been settled by payment. On the rebutting examination, the plaintiff asked the question, "were you not prepared, and did you not propose, to prove, upon that trial, that you rented the land from Thomas, and was not the proof ruled out of court?" The claimant objected to this question, but the court allowed it. The court explains this exception, by stating that the form of the question was not closely noticed, nor was any general objection taken to it, but the objection was, that the judgment precluded explanation.

The claimant excepted to the several decisions of the court, upon the questions raised, and to the charges given and refused. They are now severally assigned as error.

L. E. Parsons, for the plaintiff in error, without waiving the points not specifically noticed, insisted—

1. That the declarations of the claimant were admissible to explain the act of delivery. [Frow v. Ferguson, 6 Ala. R. 879; Wilkins v. Farley, 14 E. C. L. 366.]

2. The notoriety of the sale was proper evidence to rebut the presumption of fraud, arising out of a secret conveyance, and therefore the evidence offered was proper. [Lawson v. Orear, 8 Ala. Rep. ; Oden v. Stubblefield, 4 Ala. R. 42; Pugh v. McRae, 2 Ib. 395.]

3. The deposition of the defendant having been taken previous to the passage of the act, cannot be affected by it. [Boyce v. Holmes, 2 Ala. Rep. 54.]

4. The admissions of Thomas, that he was a boarder with the claimant, were proper to explain the doubtful question of possession, on the principle, that what one says as to his title when in possession, is good evidence to show the nature of his claim.

5. The first charge asked should have been gived in the terms requested, and the court will not consider one substantially the same, as equivalent. [Maynard v. Johnson, 4 Ala. Rep. 116.]

6. The 4th and 5th charges are in accordance with the rules settled in Hobbs v. Bibb, 2 Stewart, 54, Ib. 336; 1 S. & P. 149; Blocker v. Burriss, 2 Ala. R. 354; 5 Ib. 542; Horton v. Smith, 8 Ib.

7. The question excepted to, is leading, and its answer entirely irrelevent.

8. The indebtedness of the defendant in attachment to the creditor, is a matter necessary to be proved, as without this, he is not in a condition to contest the sale, which is good as between the parties.

J. E. BELSER, contra.

GOLDTHWAITE, J.—1. We think there is error in one of the points ruled by the Circuit Court, and as the judgment will be reversed for this, we shall consider such other questions only as will probably again arise.

The error was in rejecting evidence of what the claimant said in explanation of the delivery of the slaves to the sheriff, under other executions. The court below seems to have considered him as entitled to show, this delivery was coupled with the assertion of title in himself, but only permitted the witness to state the declarations to this effect. It will be seen, the plaintiff had then given the fact of this delivery in evidence; and it certainly is a circumstance from which the inference could be drawn, that the title of the claimant was simulated; it was therefore important to repel this inference and every thing said at the time in explanation of the delivery, was competent evidence as a part of the *res gestæ*. As evidence, the mere assertion that the party claimed title, would scarcely do away the inference which might be drawn from a voluntary delivery; but if the entire declaration was received, it might appear that the claim of title would be perfectly consistent with the delivery—as it might be where the title had accrued after the lien of the first executions had attached, but previous to the lien of the attachment. If the plaintiff insists on this delivery for any purpose as evidence, he is bound to take it with all the explanatory declarations and circumstances, as they constitute a part of the transaction itself. [See Cowan and Hill's Notes, 585, 589.]

2. The act of 1845, 136, § 2, provides that the mortgagor, or defendant in execution, in all cases of the trial of the right of property, under that or the existing laws, shall be incompetent to give testimony between the parties. It is evident the object of this enactment is, to change the rule of decision which previously obtained in this State, and by which persons in this relation were considered as competent witnesses. This object would be attained but partially, if the enactment was held not to extend to suits of that description then in progress; nor is there any reason to exclude its operation in such suits, which would not also go to its exclusion whenever the witness was called to testify of a transaction anterior to the statute. To say the least of it, the effect of such a construction would be some singular anomalies. It is true, the general rule is, that statutes shall be so construed as to have a prospective effect only, (Philips v. Gray, 1 Ala. Rep. 226; Boyce v. Holmes, 2 Ib. 54;) but it is entirely within the power of the legislature to give a retrospective effect to any law which does not affect the obligation of a contract. [Elliott v. Mayfield, 4 Ala. Rep. 417.] The case just cited, as well as Bartlett v. Lang, 2 Ib. 401, are instances in which we held particular statutes to have a retrospective effect, so far as particular remedies were concerned. The legislature in this enactment has seen proper to declare that a particular means of obtaining evidence shall be abolished. In our judgment no one can be said to have a vested right in any description of evidence; but if such a right was supposed to exist, it is no more affected by the statute than it would be if the acts relating to depositions, or that giving ing effect to written instruments, without proof, were repealed. [Jones v. Scott, 2 Ala. Rep. 58.] Our opinion is, that the act referred to was intended to cover all trials of this description, and consequently this matter was correctly ruled in the court below.

3. It appears, this claim was instituted after a *venditioni exponas* had come to the sheriff's hands, requiring him to sell slaves previously levied on by virtue of an ancillary attachment. The statute (Dig. 57, § 11,) authorizes the interposition of a claim when the levy is by virtue of an attachment, and directs the same proceedings shall be had as

when the levy is under a *fi. fa.* Whether this extends so far as to warrant the giving of damages for delay, previous to the issuance of a *vend. ex.* we need not determine; but when the claim is interposed after that writ has come to the sheriff, it is quite clear that the suit is in all aspects equivalent to one originated upon a *fi. fa.*

4. In practice, it has always been considered, the recitals in a *fi. fa.* are *prima facie* evidence of the plaintiff's right; and it has frequently been held in this court, that the claimant would not be permitted to question the regularity of the the execution. [Bettis v. Taylor, 8 Porter 564 ; Hooper v. Farr, 3 Porter, 401 ; Stone v. Stone, 1 Ala. Rep. 582 ; Harrell v. Floyd, 3 Ib. 16.] The question at issue between the parties to suits like this, is the right of property at the time of the levy, and so far as the matter of indebtedness is involved, that is established by the attachment. [Butler v. O'Brien, 5 Ala. Rep. 317.] If it is necessary for the plaintiff to go beyond this, and show when, or how, the debt was created, it is possible he would be required to produce other evidence. Beyond this, at this time, it is unnecessary to go, and we purposely decline to consider to what extent the recitals in the pleadings would be evidence.

These conclusions show all the positions ruled by the court with reference to the admission in evidence of the attachment and *venditioni exponas* are free from error ; as are also the refusals to charge as requested, and the charges given upon the effect of those writs, and the defect of other proof of the indebtedness of the defendant in attachment.

5. So far as this particular levy was in question, it seems the defendant in attachment was not in possession when the levy was made ; to connect the slaves with, and refer the possession of the sheriff to him, the evidence of the levies by the other executions was probably given. In this view we think the production of the writs was unnecessary, as the levy is a distinct act, which derives no additional effect from being indorsed on the writ. It was the fact of the levy, and not its indorsement on the writ, which was the matter to be shown.

6. It was immaterial, from any thing stated in the bill of exceptions, to prove the notoriety of the sale under which

the claimant made title, as this could not sustain it, if invalid, or defeat it, if good. At most, it would be only hearsay, and was properly rejected.

7. As to the question which the Court permitted the plaintiff's witness to answer in explanation of the judgment which the claimant was supposed to have recovered against the witness for rent, it is merely necessary to say that if the objection was to it as a leading question, the exception for that cause ought to be specific ; [Cowen & Hill's Notes, 725 ;] and it may even admit of doubt whether this is matter to reverse a judgment, inasmuch as it is discretionary with the Court, in many cases, to allow a leading examination. [Blevins v. Pope, 7 Ala. 371 ; Stratford v. Sanford, 9 Conn. 275.] Independent of this, the question seems to have been proper enough to repel the presumption which otherwise might arise, from the fact of a judgment which, whatever is its effect, as between the parties to it, did not conclude the plaintiff in this suit.

8. The rule with respect to the substitution by the Court of its own language, instead of that in which a correct charge is asked, is sufficiently laid down by us in Maynard v. Johnson, 4 Ala. Rep. 116. When, however, the Court asserts that the charge was given substantially, it would be hypercritical for us to infer that it was given in terms which could mislead the jury. In this connexion the fifth charge refused may also be noticed, but merely to state that its refusal would not bring this case within the decision just cited, as the proper charge was afterwards given by the Court, and the one requested assumes a fact of which there is no evidence. Although this fact was immaterial, it was a sufficient reason to refsue the charge *as asked*. The proper charge being subsequently given, we will infer that the one requested was refused, as assuming facts not disclosed in evidence.

9. We shall not consider the other charges in detail. As no question of adverse title, properly so called, is raised by the proof, the Court properly refused to give those which were asked in this connexion ; and correctly charged the jury, that if the claimant's purchase was *bona fide*, they ought to find for him ; but if intended to delay the credit-

ors of the defendant, then they ought to find the property subject.

For the error we have noticed in the first paragraph, the judgment is reversed, and the cause remanded.