## Featherman's Administrator *versus* Miller.

## Same *versus* Same.

*Message sent by agent, when admissible as part of the* res gestæ.—*Testimony, when improperly withdrawn from the jury.*—*Evidence of custom, when improper.*

1. Instructions to an agent to deliver a message or make a demand, constitute part of the transaction, if the message is delivered and the demand made, and may be proved by a witness standing by at the time, as well as by the messenger himself.

2. Where, after proof of a message by the holder of a note to deliver it to the drawer, and get a receipt that had been given a few days before for the money due thereon, and evidence that the errand had been substantially performed by the delivery of the note and demand for the receipt, it was *held* error to strike out the testimony of a bystander as to the message sent, on the ground that the messenger did not state to the drawer that the paper delivered was a note against him.

3. It was incompetent for the defendant to prove, in rebuttal, by his partner, that the people of the adjoining county in which the plaintiff and messenger lived, were in the habit of sending notes to their firm to be discounted in bank, the defendant being a bank director, where there was no evidence that the plaintiff was in the habit of so doing, or that the note sent was a note for discount; and the admission of the evidence was error.

4. In an action brought by plaintiff upon other notes, against which the receipt was set up as a defence *pro tanto*, where, from other facts in the case and from the defendant's reply to the demand for the receipt that it was burnt, an inference might be drawn that the paper delivered was a note, in lieu of which a receipt had been given, and which was surrendered for the purpose of taking it up, it was error, in the charge to the jury, to withdraw, in effect, the evidence on the subject of sending the note, what occurred at its delivery, and the answer; all the evidence should have gone to the jury on the question whether or not the receipt produced was the one demanded in exchange for the note.

ERROR to the Common Pleas of *Northampton county.*

These were actions of *assumpsit,* brought by Jacob A. Featherman, administrator, &c., of Abraham Featherman, deceased, against Depue S. Miller. The first was brought to recover the balance of a promissory note, dated April 1st 1848, drawn by Depue S. Miller to Abraham Featherman, payable in one year with interest, for $606.07, upon which a payment on account of $194 was endorsed April 9th 1850. The second was brought to recover the amount of a bill single, dated April 10th 1849, executed by Depue S. Miller in favour of Abraham Featherman, deceased, for the sum of $776, payable in one year from date, with interest. Plaintiff's intestate, who was a farmer, residing in Monroe county, and defendant who, was a merchant, living in Easton, were nearly related, Abraham Featherman's wife being defendant's sister. The cases were submitted to arbitrators, who awarded for the defendant in the first, and for the plaintiff in the second suit. When the first cause was called for trial, May 2d 1860, it was agreed by the parties, and acceded to by the

[Featherman's Administrator *v.* Miller.]

court, to try both cases before the same jury, and verdicts were returned by the jury in each case, finding for the plaintiff the sum of $709.97 in the first case, and for the plaintiff in the second the sum of $1218.44. The defendant asked for and obtained a new trial in each case. August 29th 1861, the cases were again called for trial, when the parties again agreed, with the consent of the court, to try them both before the same jury. August 30th 1861, the jury brought into court sealed verdicts, and being polled, the two first called disagreed in the amounts, and the third being unable to remember the amounts, failed to answer; whereupon the jury was dismissed by the court, plaintiff's counsel objecting thereto. August 26th 1862, a jury being called, it was again agreed to try both cases before the same jury, which was done, and the jury returned a verdict in the first case in favour of the defendant, and in the other case in favour of the plaintiff for $491.83. On the same day plaintiff's counsel asked for a new trial for reasons filed, and which, after argument, was refused in both cases. Subsequently judgments *nisi* in both cases were entered.

The whole difficulty arose on account of a receipt dated April 7th 1851, signed by the plaintiff's intestate in favour of the defendant for the sum of $1050, which the defendant contended was a payment on account of the two bills in suit, but which the plaintiff contended was given in payment of another note, which had been surrendered to the defendant in the lifetime of the plaintiff's intestate, which receipt the plaintiff contended should have been returned to his intestate when he sent him the note to which it referred.

On the trial, the plaintiff gave the notes on which suit was brought in evidence, and rested.

The defendant then gave in evidence the following receipt from Abraham Featherman to the defendant: "Received, Easton, April 7th 1851, of Depue S. Miller, ten hundred and fifty dollars ($1050.) Signed, ABRAHAM FEATHERMAN." Also the following order: "Mr. Depue S. Miller. Sir—Please pay to the bearer, Harrison Snyder, the sum of forty-eight dollars, and you will oblige your friend, ABRAHAM FEATHERMAN." And closed his defence.

The plaintiff then called Daniel Miller, who testified as follows:—I was acquainted with Abraham Featherman, deceased, formerly of Hamilton township, Monroe county. He lived in Hamilton township, Monroe county. I was there making fence before Abraham Featherman's house, about the middle of April, when Jacob Featherman came along with a load of barrels; he was on the road to Easton. Abraham Featherman asked him— (This conversation was objected to, but admitted)—Abraham Featherman asked Jacob Featherman if he would take a note down against Depue S. Miller. He replied he would. This was

9 WR.—7

[Featherman's Administrator *v.* Miller.]

on the road before his house. Abraham Featherman went into his house and fetched out the note. He handed it to Jacob Featherman; something was said about a receipt, but I don't remember. I was busy working at the fence. It was in the spring of the year before old Abraham Featherman died.

Cross-examined: I have no memorandum of the date, no book account of my work, nothing by which I can fix the date; I lived about two miles from him. About six years ago I was first called on to fix the date. The middle of April is the time we generally begin fixing fences; somewhere along there. I made no fences for Abraham Featherman at any other time. I think it is the only time I made board fence for him. I don't remember how many days I worked at that fence, it was not long. I worked at the fence across the road from the house. Jacob Featherman's wagon was near the middle of the road. I saw the paper that was handed to Jacob Featherman; he called it a note. I could not say it was a note; I did not see if anything was written on the paper; I was not far off; I was not near enough to see if anything was written on it. I could not read it if I had seen it. There was something said about a receipt, but can't remember what it was. I don't think the paper handed to Jacob Featherman was tied or wrapped up, it was folded up. No other conversation than what I stated, as I heard. Part of this, to wit, that which related to the request made by Abraham Featherman and that relating to the receipt, was subsequently ruled out by the court.

Jacob C. Featherman was then called, who said: I knew Abraham Featherman. I came along there with a load of whiskey barrels, as near as I can tell, the 14th of April 1851. Abraham Featherman stopped me. He said I should take a note down and give it to Depue S. Miller, at Easton, and he said I should ask him for a receipt. Abraham Featherman gave me the note, and I took it down to Easton, and gave it to Depue S. Miller, in his storehouse. I asked him for a receipt, and he would not give me one. He said he had destroyed it, or burned it. Depue S. Miller took the note. Daniel Miller and Absalom Featherman were at Abraham Featherman's house when I got the note.

Cross-examined: I have no book, or memorandum to fix the time by; I took it as near as I could tell. I was in the habit of doing errands for neighbours a good deal. I can't tell what other errands I had that trip. I did not open the paper to see what it was. He asked me if I would take a note down for him. I said yes—I said that I would. I believe that is all he said; he asked me to bring back a receipt for it. I don't know who was in the store when I handed it to him. When I handed the note to Miller I asked for the receipt. I can't just say what I said; not all I said to him; I can't tell what I said to Miller; I can't tell what he said.

[Featherman's Administrator *v.* Miller.]

Re-examined: I can't tell what I told Depue S. Miller when I came down, when I gave him the note. I asked Miller for the receipt; he said he would not give me one, that he had destroyed it, or burned it.

Re-cross-examined: Depue S. Miller did not tell me he had burnt the note. I don't recollect anything about it; I remember he said a receipt. I know nothing about this note; I know I fetched the note down. It was a note. Old Abraham Featherman told me it was a note. I can't recollect that I testified before the arbitrators that he said he would burn the note; I don't recollect that I testified in court that Miller said he had burnt the note; I don't recollect that I testified in court that Miller said he would burn the note. I testified in court that Miller said he would destroy the receipt, or burn it—that is what he did say, as near as I can recollect. I am a brother's son of Abraham Featherman.

Re-examined by plaintiff: I did not say in court that Miller said he had burnt the note.

Other witnesses were called and examined by the plaintiff.

Thomas T. Miller was then called by the defendant to contradict the testimony of Jacob Featherman, or rather to prove that his memory in regard to this transaction was defective. In the course of his examination the defendant's counsel propounded the following question: "Was or was not your firm in the habit of receiving notes from your friends in Monroe county to be discounted in bank, some of which were discounted by you before discount day?" This was objected to by plaintiff's counsel, but was admitted by the court under exception.

The court below, after stating the case, charged the jury as follows:—

"If the testimony rested on these notes, receipts, and order, I presume you would have little difficulty as to your verdict. Although this receipt for $1050 does not declare that Abraham Featherman received that money on a note or notes which he had at home, yet you might fairly so presume without evidence of other transactions between these parties, it appearing by the two notes given in evidence that Featherman had them at the time the receipt was given. But the plaintiff contends that his intestate had another note against the defendant, Miller, to which this receipt was intended to apply; that he sent it down to Depue S. Miller by Jacob Featherman, requesting the return of this receipt; that Miller took the note from the messenger, but refused to give up the receipt, alleging that he had burnt or destroyed it. This, gentlemen, is the great dispute between these parties. It is a pure question of fact for you to decide from the testimony. It is your duty to decide it not upon mere surmise, but according to the evidence. We at first admitted Daniel Miller to testify his recollection of the message sent by

[Featherman's Administrator *v.* Miller.]

Abraham Featherman to Depue S. Miller by Jacob Featherman, upon the statement of plaintiff's counsel that it would be followed up by testimony showing that the message as testified by Daniel Miller had been delivered by Jacob Featherman to D. S. Miller—but this proof did not sustain this statement. Jacob Featherman did not in *words* or *substance* tell D. S. Miller that A. Featherman had said that he had sent to him, Miller, a note *against him.* We, therefore, on the application of the defendant, struck out that part of Daniel Miller's testimony, and it is therefore no longer before you. You have no right to consider it; you would do wrong to consider it; it should be as if never spoken. If it had not been stricken out, we would have felt it our duty to have called your attention to the fact that Jacob C. Featherman, according to his testimony, did not so hear the message. He to whom it was spoken did not, according to his testimony, hear anything said by Abraham Featherman about this note being against Depue S. Miller. If it had been so said, would not he have been more likely to have heard it than one working some distance off, a mere uninterested listener? [But, gentlemen, as we have said, no such message having been proved to have been delivered, this testimony has been stricken out, and you are to blot it from your recollection.] You, then, have the testimony of J. C. Featherman, whose credibility is for you, that Abraham Featherman requested him, Jacob Featherman, to take a note down, and give it to Depue S. Miller, at Easton, and ask for a receipt. He says, in substance,—you will recollect his words,—that Abraham Featherman gave him a note, requesting him to take it down to and give it to D. S. Miller, at Easton, and ask him for a receipt. That he took it down to Easton, and gave it to Miller, and asked him for a receipt, who would not give it, alleging that he had destroyed or burnt it. It is for you, gentlemen, to decide upon the credit you will give a witness. If his story is improbable, if he is shown to be biassed in feeling, or having a failing, uncertain recollection; if he has contradicted himself, or made other and different statements at other times, these all would properly weigh with you as to the effect you would allow his testimony. There is no direct testimony now before you, showing that the paper sent was a note *against Depue S. Miller*—whether there is any from which you might properly infer that it was a *note at all,* we will speak subsequently. Is there testimony from which you can properly infer it? To so conclude, you ought to be satisfied by *testimony* that convinces you, as intelligent men conversant with the transactions of *fellows.* You have heard the arguments of counsel on both sides in reference to this paper sent by Jacob Featherman, and the testimony generally. When they differ in their recollection as to the testimony given, you will decide according to your recol-

[Featherman's Administrator *v.* Miller.]

lection.    While we desire you to understand that mere questions of fact are entirely for you, and the court does not desire to interfere, it may not be improper to say, that it seems to us certainly strange that if this receipt were to be applied to this alleged note sent by Abraham Featherman, and his messenger returned without it, that A. Featherman never seemed, as far as the testimony shows, to have concerned himself about it, although he lived some eighteen months after, and must, in that event, have known that both note and receipt were in the hands of D. S. Miller, or *might* be.    We have no testimony that he ever complained to Miller about it, nor is there any evidence that Abraham Featherman ever held any other note against defendant than the two now given in evidence.    The defendant has also offered evidence by Thomas J. Miller and James Moser, showing, as they contend, that Jacob Featherman at another time either told another story or showed a forgetfulness and want of recollection and knowledge as to what he has testified to.    They have also read from the notes of testimony at former trials, showing, as they contend, that he has made different statements at different trials.    We repeat, gentlemen, that the credibility of all the witnesses is for you.    The plaintiff also urges the testimony of Simpson Featherman as to D. S. Miller's admission of indebtedness soon after the death of the father of the witness.    This should receive your due consideration.    The law upon his assignment and transfer of his interest in his father's estate made him a competent witness, leaving however his credibility under the position he has occupied and his testimony as given entirely for you. We sum up, then, gentlemen, are you satisfied from the whole testimony that this receipt should not be credited on these notes, or does the testimony convince you, satisfy you, that this $1050 receipt relates to another transaction or another note?    If you find that this receipt ought to be credited on these notes, then you will find in favour of the defendant in the first suit, and then deducting the balance of the receipt, having deducted therefrom the amount of the first note less the payments, and making proper interest calculations, and this order of $48 from the second note, render a verdict in the second suit for the plaintiff for what is yet due him.    You will have the calculations of both parties.

"If, however, you find that this receipt does not relate to these two notes, or either of them, but to another note, or another transaction, then you will leave it out of your calculation altogether, and render your verdict in the first suit for the amount of the first note and interest, deducting the payments of $194 of the date made, and the $48 of its date, and in the second suit for the amount of the note under seal, with interest.    ['The defendant requests us to charge you, that there is no evidence in the case that the paper said to have been carried by Jacob C.

[*Featherman's Administrator v.* Miller.]

Featherman to D. S. Miller was a note.' After careful examination of the testimony, we feel it our duty to answer this point in the affirmative.] It is true that Jacob Featherman testifies that Abraham Featherman called the paper he handed him *a note.* But he says that he did not open the paper to look what it was. So that never having opened it, he could not have read it. [This paper, he testified, he handed to Miller, only asking for a receipt. He therefore knows nothing that this paper was a note except from Abraham Featherman's declarations, and we charge you that Abraham Featherman's declarations in the absence of the defendant, and not communicated to him, are not evidence against him.] We were asked to strike out J. Featherman's testimony as to Abraham Featherman's declarations that this was a note; but preferred, as it was connected with the message received and delivered, to give you directions in relation to it in our charge."

Under these instructions there was a verdict and judgment in favour of plaintiff for $491.83. Whereupon the plaintiff sued out this writ, and assigned for error—

1. The striking out of that part of Daniel Miller's testimony in chief, wherein he said, "Abraham Featherman asked Jacob Featherman if he would take a note down against Depue S. Miller, and that something was said about a receipt."

2. Permitting Thomas J. Miller to answer the question as to his firm receiving notes from friends in Monroe county, to be discounted in bank, &c. The 3d, 4th, 5th, and 6th errors assigned were to those portions of the charge that are enclosed above in brackets.

*Peter Ihrie,* for plaintiff.

*Reeder & Green,* for defendant.

The opinion of the court was delivered, May 6th 1863, by

THOMPSON, J.—On the trial of these cases, the plaintiff in the first place, put in evidence the two notes for which the suits were brought, and rested. Then the defendant, under his plea of payment, gave in evidence the receipt of Abraham Featherman, dated the 7th of April 1851, acknowledging the payment to him of $1050, and also rested. About this receipt was the whole controversy in the case, the defendant insisting on its application in discharge of the notes *pro tanto,* and the plaintiff denying it. If the pleading had been special, this would have been the only issue. To rebut this evidence, the plaintiff set up and undertook to show that the receipt grew out of a different transaction; that it was given by the intestate for money received on another note surrendered a few days after the date of the receipt. To establish this, he called Jacob Featherman, and

proved by him that on one occasion, when he was going to Easton, Abraham Featherman gave him a note, to use his own language, "to take down and give it to Depue S. Miller, at Easton, and he said I should ask him for a receipt. I took it down to Easton, and gave it to him in his store. I asked him for a receipt, and he would not give me one. He said he had destroyed it or burned it."

The evidence was properly received by the court, as it was connected with a transaction in which it was alleged that the surrendered note formed a part, and the receipt the other part, and to consummate which the note was to be given up by the one party, and the receipt by the other. This was the plaintiff's theory, and he was entitled to make it out if he could. Every part of the transaction, during its progress towards completion, was evidence on the principle that it was *res gestæ*. "The affairs of men," says Greenleaf on Ev., vol. 1, § 108, "consist of a complication of circumstances so intimately interwoven as to be hardly separable from each other." "These surrounding circumstances, constituting parts of the *res gestæ*, may always be shown to the jury with the principal fact." Here the principal fact alleged was the delivery of a note and the demand of a receipt. As the party constituted an agent to do this for him, his declarations in the shape of instructions were evidence; they were a part of the very fact, and provable as part of the *res gestæ*. Declarations made at the time, are part of the transaction, and are proper as evidence on this principle: 9 Ala. 382. To be contemporaneous, it is not essential they should be concurrent in point of time. If they spring out of the transaction, if they elucidate it, if they are voluntary and spontaneous, and if made so near to the time of it as reasonably to preclude the idea of deliberate design, they are to be regarded as contemporaneous: 11 Geo. Rep. 615. Declarations of a party paying money for the purpose of showing its appropriation, become part of the *res gestæ*: 25 Verm. Rep. 308. To the same effect are numerous authorities to be found in note 1, p. 86 of Sharsw. Stark. on Ev., and in note 169, p. 207, 3 Cow. & Hill's Phillips' Ev.

Instructions to a servant or agent to deliver a message or make a demand, if the message be delivered or the demand made, certainly constitute a portion of the transaction, and would be often insensible without showing them. All the authorities sustain this. The court permitted all this to be proved by the agent himself, but struck out the proof of instructions by a bystander. I do not quite realize the distinction taken by the learned judge. If the evidence was such as might be given by one, any other disinterested witness ought, I should think, to be able to give it also. That it was competent to be given by either or both, after proof that the errand was done, or proposed to be

[Featherman's Administrator *v.* Miller.]

shown to be done, we have no doubt. It was part of the *res gestæ*. That the errand was not satisfactorily performed as exhibited in the proof, was no reason for striking out the evidence, provided there was enough disclosed to submit the question of whether it was substantially done or not. We think the testimony should have gone to the jury on this ground, and we are of opinion, therefore, that there was error in striking out the testimony of Daniel Miller.

2. The second assignment of error is also sustained. The fact that the people of Monroe county, where Abraham Featherman and his messenger lived, sometimes sent notes to the firm of which the defendant was a member, and a director of a bank, to get them discounted, rebutted nothing which the witness said, nor did it raise any presumption that the note alleged to have been sent by Abraham Featherman was for such a purpose; for it was not found that he was in the habit of doing so, or did so on any occasion. Certainly there was not a shadow of ground to suppose that the note sent was for some one else. The testimony was clearly incompetent. If we could believe that the testimony was harmless, we would not make it a ground of reversal. But of this we cannot feel assured. It might, in a case where a witness possessed no more intelligence than the messenger in this case displayed, be with plausibility and force argued that the note he carried was for some Monroe county applicant for a loan from the Bank of Easton. A jury might be taken by the argument, inasmuch as it had the judicial sanction in its admission, and suppose that it was good for some purpose. We think it was erroneously admitted.

The errors assigned in the charge of the court next demand our attention, and will be considered together.

The learned judge, in effect, withdrew the evidence on the subject of the note alleged to have been sent to the defendant, of what occurred at its delivery, and the defendant's answer to the demand for a receipt, and thereby determined that no inferences of fact could be made from the evidence. We cannot agree to this. The principal reason given for the charge on this point seems to be, that the witness did not say when he handed the note, or rather could not remember whether he said it was a note or not. Now whether he did so or not, was susceptible of proof by other means than the abstract recollection of the words used by the witness when he presented it. The reply might disclose what was said. Was it not such as from which an inference, aided by the facts in the case, might be drawn that it was a note, and also that it was a note in lieu of which a receipt had been given, and which was now surrendered for the purpose of taking it up? What was the answer to what was said by the messenger? It was that the receipt was destroyed or burnt. This certainly

implied that it once existed; and did it not imply also that the equivalent of the note he received was asked for, as he refused it on the ground that an exchange was impossible, because the receipt was destroyed? We do not mean to occupy the jury-box and draw inferences; but we think this evidence, together with the fact that a receipt was given seven days before by Featherman to Miller, and the allegation that a receipt had been burnt, without showing why it was burnt or for what given, should all have gone to the jury, on the question raised whether or not the receipt produced was not in fact the one demanded in exchange for the note. The omission to show anything corroborative of the allegation by the defendant that there was a receipt which had been burnt, if the evidence that he made this excuse was believed, was a circumstance to be considered by the jury. The saying is true undoubtedly, in some cases, that evidence consists not only of what is proved, but of what is not proved. To some extent we think it true here. But we have said as much as is necessary and proper, as this case goes back for retrial, to show that, in our opinion, there was error as alleged in the two specific assignments in the charge. The third assignment is for general errors, and this we do not notice.

For these reasons the judgments are reversed, and *venires de novo* awarded.