Booker v. Armstrong.

Booker, *Administrator, Appellant*, v. Armstrong, *Administrator*.

1. **Administration:** COMMISSIONS OF EXECUTOR. An executor is entitled to the commission of five per cent. on disbursements allowed by statute, but there is no authority in law for *per-diem* charges by him.

2. ———— : INTEREST ALLOWED EXECUTOR FOR ADVANCEMENTS. Where it appears that an executor had sufficient funds of the estate in his hands for all proper disbursements required to be made, he will not be allowed interest on moneys advanced by him for the estate.

3. **Limitations:** MORTGAGES AND DEEDS OF TRUST : FORECLOSURE : SALE. Although a bond or note secured by a mortgage or deed of trust may be barred, so that no action can be maintained upon it, yet the mortgage may be enforced by foreclosure, or a sale be made under the deed of trust.

4. ———— : ———— : ———— : ————. To bar a foreclosure under a mortgage or deed of trust, it must appear that there has been ten years' possession of the property, adverse to the mortgagee.

| 93 | 49 |
| 31a | 659 |
| 93 | 49 |
| 98 | 268 |
| 99 | 525 |
| 93 | 49 |
| 101 | 280 |
| 101 | 398 |
| 93 | 49 |
| 103 | 655 |
| 93 | 49 |
| 47a | 438 |
| 93 | 49 |
| 108 | 514 |
| 108 | 522 |
| 93 | 49 |
| 109 | 160 |
| 110 | 372 |
| 111 | 404 |
| 49a | 51 |
| 93 | 49 |
| 129 | 507 |
| 93 | 49 |
| 75a | 493 |
| 93 | 49 |
| 151 | 117 |
| 93 | 49 |
| 176 | 196 |
| 95a | 335 |

Booker v. Armstrong.

5. **Administration**: LIABILITY OF EXECUTOR OR ADMINISTRATOR. The law holds an executor or administrator responsible for the want of due care in protecting the property of the estate from theft or loss; and the measure of the care and skill which they are required to use is that which a prudent man exercises in the direction of his own affairs.

6. ——— : ———: BURDEN OF PROOF. An executor or administrator is responsible for loss by the insolvency of a debtor of the estate when he has failed to exercise the same care that a prudent man would exercise in the conduct of his own affairs. He must use all reasonable diligence in collecting the assets of the estate, and the burden of proof is upon him to show that the debt due the estate could not have been collected by the exercise of proper diligence.

7. ———- : DEATH OF EXECUTOR OR ADMINISTRATOR. Upon the death of an executor or administrator, the property of the estate remaining in his hands does not go to his representatives, but to the administrator *de bonis non*.

8. ——— : NEGLIGENCE OF EXECUTOR : LIABILITY. An executor who for five years, neglects to sell under a deed of trust securing a note, worthless as a personal demand, during which time the value of the security is greatly reduced, will be held accountable for such depreciation in the value of the security.

9. ——— : INTEREST ON ASSETS. An executor is not chargeable with interest on money of the estate held in his hands in the necessary transaction of the business of the estate.

*Appeal from Marion Circuit Court.*—HON. THEO. BRACE, Judge.

REVERSED AND REMANDED.

*Harrison & Mahan* and *W. M. Boulware* for appellant.

(1) The court erred in refusing to credit the estate of Wm. Booker, late executor of Grove, with the amount charged on the inventory on account of the Pogue note. (2) If the estate of the executor is chargeable on account of the Pogue note, it is only by reason of the Wardlaw deed of trust, and is chargeable only with what a sale under said deed, made within a reason-

able time after the deed came to the hands of the executor, would, under all the circumstances, have realized on the note. (3) The transfer of the note to Lakenan, successor of the executor, carried the deed with it, and the estate of the executor cannot be charged with the note on account of the deed unless, first, the security was sufficient to pay the debt, and, second, unless it had, at the time of transfer, become unavailable by reason of the running of time. (4) The right of action under the deed had not been barred by the running of time. The statutes of limitation apply to actions to foreclose mortgages. *Bush v. White*, 85 Mo. 339 ; *Johnson v. Johnson*, 81 Mo. 331. The statute applicable is that relating to actions concerning land. There must be possession in the mortgageor before the statute will begin to run. *Bush v. White, supra.* The evidence shows that neither Wardlaw nor his representatives were, at any time, in possession of the land, and, after the death of Grove, they never paid any taxes thereon, made any claim thereto, and never exercised any acts of ownership over it. The court erred in refusing appellant's ninth and tenth instructions. *Locke v. Caldwell,* 9 Central Law Journal, 351 ; *Chouteau's Exr's v. Burlando,* 20 Mo. 488 ; *Bollinger v. Chouteau,* 20 Mo. 93 ; *McNair v. Lotts,* 34 Mo. 285 ; *Waldo v. Rice,* 14 Wis. 286 ; *Lingan v. Henderson,* 1 Bland, 286 ; *Browne v. Browne,* 35 Am. Rep. 97; s. c., 17 Fla. 607; *Bizzle v. Nix,* 60 Ala. 281; s. c., 31 Am. Rep. 38; *Arrington v. Lissom,* 8 Am. Law Reg. [N. S.] 123 ; s. c., 14 Cal. ; *Insurance Company v. Brown,* 3 Am. Law Reg. [N. S.] 46 ; *Pratt v. Huggins,* 29 Bart. 282 ; 2 Hill Mort., ch. 25 ; 2 Washburn Real Est., 169, sec. 25, pp. 170–3. (5) The deed of trust passed the legal title to Price, the trustee, and, in the absence of actual possession of the land by Wardlaw, or his representatives, and of any acts of ownership by him or them over the land, the legal possession followed the title, and was in Price, for the beneficiary

in the deed, and during such time the statute of limitation did not run in favor of Wardlaw, or his representatives, against ejectment by said trustee or foreclosure by said beneficiary. The court erred in refusing appellant's tenth instruction. (6) The appellant cannot, in this proceeding, plead the statute of limitation in behalf of Wardlaw's representatives against the deed of trust. The court erred in refusing appellant's eighth instruction. (7) The non-residence of the heirs of Wardlaw prevented the running of the statute against the deed of trust. (8) The court erred in refusing the thirteenth instruction. The acts of the executor, in paying taxes on the land, claiming it as belonging to the estate, and putting it in the hands of an agent to protect it from trespassers, constituted actual proprietorship by him. (9) The evidence in this case was sufficient to rebut the presumption of payment, and to show that the indebtedness had not been paid. (10) The court erred in charging as a debit against the estate of said executor the sum of $3,229.30 as interest. The executor was not chargeable with interest on assets in his hands, unless he used said assets in his own business, or received interest thereon. (11) The court erred in refusing to allow the estate of said executor credit on account of taxes paid by said executor on the lands conveyed by Wardlaw, by deed of trust, to secure the said note of Pogue to Grove, amounting to the sum of $2,415.53. (12) The court erred in refusing to credit the estate of said executor with the several amounts credited and allowed to said executor by the probate court on his several annual settlements, and credited to his estate on the final settlement in said court, on account of services rendered the estate of Grove by said executor, amounting to the sum of $7,212.47. There was no evidence in the circuit court as to the extent or value of the services of the executor. And the action of the probate court, in allowing the credits on the annual settlements, was judicial and

*prima facie* correct. It was subject to review on final settlement in the nature of a surcharge, and could be set aside under, and only under, evidence to the contrary. *West v. West,* 75 Mo. 208 ; *Seymour v. Seymour,* 67 Mo. 303 ; *Richie v. Withers,* 72 Mo. 559 ; *Picot v. Biddle,* 35 Mo. 29.

*Geo. P. Strong* for respondent.

(1) The appellant is not entitled to a credit for the amount of the note of Geo. B. Pogue. It came into the executor's hands with the deed of trust upon the Wardlaw lots to secure it, and was inventoried by him as assets of the estate in October, 1867. The burden of showing that it "was impossible" for the executor to have collected "the claim by the exercise of due diligence," rested upon him. He furnished no proof that it was uncollectible. The proof was ample and uncontradicted, that the lots embraced in the deed of trust were worth nearly two thousand dollars more than the amount due on the note, as late as 1871. R. S., sec. 240 ; *Williams' Adm'r v. Heirs of Pettigrew,* 62 Mo. 460. The executor's estate should be charged with the amount of the Pogue note, and interest up to the date of filing his final settlement. The interest is as much a part of the note, lost by his maladministration, as the principal. *Madden's Heirs v. Madden's Adm'r,* 27 Mo. 546. (2) The executor's charge of $2,415.53 for taxes paid on the Wardlaw lots, embraced in the deed of trust given by Pogue and wife, and Wardlaw and wife, to secure the Pogue note, was properly disallowed by the circuit court. The payment of these taxes could not possibly be of any benefit to the estate, unless the proceeds of the lots, or a title to them, was secured by a sale under the deed of trust. This the executor neglected to secure, and thereby made the payment of them a clear loss to the estate of the full amount paid, $2,415.53. He should receive no

credit for any part of it.   The authorities cited under
the first point sustain respondent's proposition in the
second point.   The payment of this $2,415.53 was lost
to the estate by the executor's failure to secure the land
or its proceeds by a sale, while the note was in force as
a valid claim.   (3) The charge of $8,712.47, made by the
executor over and above his commissions for the care of
the estate, was without any authority in law.   It is made
up by charging nine hundred dollars per annum for the
first and second years of his administration, and three
dollars a day, or nine hundred and thirty-nine dollars
for three hundred and thirteen days in each year, from
the fourth to the ninth year, both inclusive, and five
hundred dollars for the tenth year, and seven hundred
and fifty dollars for the eleventh year, to which $18.95
has been added by his administrator, the appellant.   All
these charges were properly disallowed.   The court did
allow full commissions of five per cent. on all disburse-
ments, making two thousand and seventy-five dollars,
and an additional sum of one thousand five hundred dol-
lars, a very liberal allowance, for the care of the real es-
tate.   In all this the court committed no error.   R. S.,
sec. 229; *Gamble v. Gibson,* 59 Mo. 585; *Williams v.
Heirs of Pettigrew,* 62 Mo. 450; *Hawkins v. Cunning-
ham,* 67 Mo. 415; *Julian v. Abbott,* 73 Mo. 580, see instruc-
tion approved; *Foster v. Davis,* 46 Mo. 268.   (4) The
charge of nine hundred and fifty dollars for interest
on advances has no foundation to rest upon.   The exec-
utor made no advances.   He was largely indebted to the
estate during his entire administration, as appears from
the judgments of the probate and circuit courts.   The
claim was properly disallowed.   (5) The estate was not
bound to accept the Pogue note, after it was barred by
limitation, nor to take the chances of making anything
out of the deed of trust.   It was the executor's duty to
enforce the deed of trust, before the note was barred.
He cannot discharge his liability for the loss occasioned

by his negligence, by turning over to his successor a worthless note and deed of trust. There was no acknowledgment of the debt, after the note came to the executor's hands. All remedy on both note and deed of trust was lost by the lapse of ten years. R. S., sec. 3229 ; *Harris v. Mills*, 28 Ill. 44 ; *March v. Mayers*, 85 Ill. 177 ; *Demarest v. Wyncoop*, 3 J. Ch. R. 129 ; *Giles v. Baremore*, 5 J. Ch. 545 ; *Nash v. White*, 3 Bro. 289 ; *Jackson v. Wood*, 12 J. Rep. 242 ; *Collins v. Torry*, 7 J. Rep. 283 ; 2 Washb. on Real Prop. [4 Ed.] top p. 183-4 ; *Wood v. Augustine*, 61 Mo. App. 50 ; 2 Washb. on Real Prop. [4 Ed.] top p. 181, *et seq.*; *McNair v. Lott*, 34 Mo. 302 ; *Cape Girardeau Co. v. Harbison*, 58 Mo. 96 ; *Bush v. White*, 85 Mo. 339 ; *Johnson v. Johnson*, 81 Mo. 331. (6) At the final settlement the court has the power of correcting errors, and supplying omissions, in the annual settlements. The theory of final settlements is, that the court makes them, allowing what seems to be lawful and right, and disallowing what is illegal or improper. On appeal, the circuit court tries the case *de novo*, with the same powers that the probate court possessed. Parties should not be bound by proceedings at the filing of annual settlements, of which no notice is given. Allowances made in annual settlements may be stricken out. R. S. 1879, sec. 299 ; *Picot v. Biddle's Adm'r*, 35 Mo. 29 ; *Baker v. Runkle's Ex'r*, 41 Mo. 391 ; *In re Jas. L. Davis' Ex'r*, 62 Mo. 450 ; *Ritchey v. Withers*, 72 Mo. 556 ; *North v. Priest*, 81 Mo. 561 ; *Fenix v. Fenix's Adm'r*, 80 Mo. 27 ; *State to use v. Roeper*, 82 Mo. 61.

BLACK, J.—Jacob E. Grove died testate in 1867, and William Booker qualified as executor in October of that year, and continued to act as the executor of the Grove will until his death in 1878, a period of ten years and some months. During all this time, there was a suit pending in the courts in which the validity of the will was contested. Samuel F. Booker took out letters of

administration on the estate of William Booker in April, 1878; and at the same time R. F. Lakenan was appointed administrator of the Grove estate, pending the will contest.    On the 15th of July, 1879, Samuel F. Booker, as administrator of William Booker, filed in the probate court of Marion county, a settlement of the Grove estate. From the judgment of the probate court, an appeal was prosecuted to the circuit court, where, upon a trial anew, there was a judgment in favor of the Grove estate for $7,732.10, and Booker appealed to this court.    While this suit was pending in the circuit court, Lakenan died and the defendant, Armstrong, was appointed in his place.    The settlement filed in the probate court by Samuel F. Booker, as administrator of William Booker, is a copy of the eleventh annual settlement made by the late executor.    Attached to this is a recapitulation.

The annual settlements are accounts current of money received, and paid out, and they show the total receipts to have been $41,514.24.    The disbursements amount to the aggregate sum of $52,640.60, leaving a balance of $11,126.36 due to the executor.    The recapitulation, on the one hand, charges the executor with all the notes and accounts included in the inventory, and, on the other hand, credits the executor with worthless notes and other evidences of indebtedness, turned over to Lakenan.    Among the notes thus turned over is one known as the Pogue note.    The debits of this exhibit amount to $66,313.47, and the credits to $77,439.83; thus again showing a balance due the executor of $11,126.36.

1.    The executor, in his second annual settlement, took a credit, "For services from October, 1867, to October, 1868, $900."    A like credit, differing in amount, is found in each subsequent settlement, in all $8,699. These items are brought into the final settlement.    These charges are generally made as for services at three dollars per day.    The executor is entitled to the commissions of five per cent. on disbursements allowed by statute,

but there is no authority in law for this *per-diem* charge. The bare statement of the claim condemns it. The executor received fair allowances for leasing property and such like services, which are not controverted here, and it is, perhaps, enough to say that these credits for *per-diem* services were not urged here in the oral argument and they will be disallowed, as they were by the circuit court.

2. The item of nine hundred dollars, for which a credit is claimed as interest on moneys advanced for the estate, appears in the settlement of 1877. Excluding from the executor's credits, the unwarranted credits before mentioned and it then appears there was no necessity for advancing money to the estate. It had enough of its own in the hands of the executor for all proper disbursements required to be made. It follows that this claimed credit must be excluded.

3. The next question arises over the Pogue note, and taxes paid on the Wardlaw land, for which a credit is claimed. The executor inventoried a note dated March 1, 1865, made by Geo. B. Pogue for $4,113, due in one year with ten per cent. interest, and payable to Mr. Grove, the deceased. A credit placed on the note on August 9, 1867, shows that the interest had been paid to April 20, 1867. The note was secured by a deed of trust of even date made by Pogue and wife, and H. H. Wardlaw and wife, upon fifty acres of land known as Wardlaw's addition to the city of Hannibal; this deed of trust was recorded in December, 1867. From 1867 to 1872, this land is shown to have been worth from one hundred to one hundred and twenty-five dollars per acre, but after that it was of no greater value than forty or fifty dollars per acre. At the date of the inventory Pogue was and ever since has been insolvent. Neither Wardlaw nor his heirs have ever made any claim to the land. In 1871, the late executor took some steps to prevent persons from trespassing upon it, but the land was not

in the actual occupancy of any one. From and after November, 1875, but not before, the executor paid taxes on the land, in all amounting to $2,415.63. He never foreclosed, or made any effort to foreclose, the deed of trust.

On August 1, 1878, which was before this final settlement was presented to the probate court, Samuel F. Booker, as administrator of the estate of the late executor, turned over to Lakenan, administrator of the Grove estate, certain notes, including the Pogue note and Wardlaw deed of trust. Lakenan receipted for them as "worthless or in litigation," and subsequently, and in December, 1881, tendered the note and deed of trust back to Booker, but he refused to accept them. It will be seen that the executor allowed the note to become barred by the ten-year statute of limitations relating to personal actions. But the Grove estate could not have suffered any loss by reason of the failure of the executor to prosecute a personal action against Pogue, for he was and still is insolvent. In some states, it is held that when the note is barred the mortgage lien is barred. 2 Jones on Mortgages, sec. 1207. The same author, however, says, at section 1204, that "the fact that a debt secured by a mortgage is barred by a statute of limitations does not necessarily, nor as a general rule, extinguish the mortgage security, or prevent the maintaining of an action to enforce it." Many authorities are cited by counsel for appellant, in their supplemental brief, in support of this doctrine, but they need not be specially mentioned. It has been held in this state that, though the note or bond, secured by a mortgage or deed of trust, may be barred, so that no action can be maintained thereon, yet the mortgage may be enforced by foreclosure or a sale under the deed of trust. *Chouteau v. Burlando*, 20 Mo. 483; *Cape Girardeau Co. v. Harbison*, 58 Mo. 90; *Wood v. Augustus*, 61 Mo. 46; *Lewis v. Schwenn*, *ante*, p. 26. In the case last cited, it is

held that, to bar a foreclosure under a deed of trust or mortgage, it must appear that there has been ten years possession of the property adverse to the mortgagee. In this case, there has been no such possession, and the deed of trust was available to the estate for what the land was worth, though the debt was barred by the statute of limitations.

The law holds an executor or administrator responsible for the want of due care in protecting the property of the estate from theft or loss, and the measure of the care and skill which they are required to use is that which a prudent man exercises in the direction of his own affairs. *State ex rel. v. Meagher*, 44 Mo. 357; *Foster v. Davis*, 46 Mo. 268; *Fudge v. Durn*, 51 Mo. 264. So an administrator or executor is responsible for loss by the insolvency of the debtor to an estate, when he has failed to exercise the same care that a prudent man would exercise in the conduct of his own affairs. 3 Will. on Ex'rs [Am. notes by Perkins] 1910, and notes. There can be no doubt but the executor must use all reasonable diligence in collecting the assets of the estate. And the burden of proof is upon him to show that the debt due the estate could not have been collected by the exercise of proper diligence. *Williams' Adm'r v. Petticrew*, 62 Mo. 471.

It appears that Pogue, who was engaged in the tobacco business, was prosecuted by the United States in 1864, or 1865, and sentenced to imprisonment for six months, and there is evidence that it was the impression in the community that the government had some claim or lien on the land. It may be that such was the fact, and for that reason the executor would be justified in not making a sale of the land, but no certain proof is made that the government had, or claimed to have, any lien on the property, and we cannot accept the evidence of such a rumor as proof of the fact. For five years, the proof is, the land was of the value of the debt, and

it was great negligence on the part of the executor not to foreclose the deed of trust during that time. Thereafter, the security became reduced in value at least fifty per cent. Had there been a total loss of the security, there can be no doubt but the estate of William Booker should be charged with the amount of the note, and also the taxes paid on the land, and that, too, even in this proceeding.

But there was not a total loss, and this is not a final settlement of the Grove estate. It is a settlement under section 48, Revised Statutes, which, in substance, provides, that if any executor or administrator die, his legal representatives shall account for, pay, and deliver, to his successor, all money, real and personal property of every kind, and all rights, credits, deeds, evidences of debt of the deceased, at such times and in such manner as the court shall order on final settlement with such representatives, to be made on motion of the successor. In view of this, and other provisions of our administration law, it has been constantly held, that, on the death of an executor, the property of the estate remaining in his hands does not go to his representatives, but goes to the administrator *de bonis non*. *State to use v. Hunter*, 15 Mo. 490; *State ex rel. v. Dulle*, 45 Mo. 269; *Scott v. Crews*, 72 Mo. 261; *State ex rel. v. Heinrichs*, 82 Mo. 544. Mr. Lakenan occupies the position of an administrator *de bonis non*, here, at least, so far as this settlement is concerned. It is said there was an order of the probate court on Samuel F. Booker, administrator of the late executor, to turn over the assets to Lakenan, made in August, 1878, but if any such order was made, it is not preserved in this record, and, therefore, not before us. It does appear that on the first of August, 1878, Samuel F. Booker, as administrator of William Booker, turned over to Lakenan a long list of notes, accounts, and stocks, among which were this note and deed of trust. It was not until

December, 1881, that Lakenan tendered them back, a period of over three years.

It may be that circumstances will arise where the estate of a deceased executor or administrator should be charged with the full amount of a note or other evidence of indebtedness, because of depreciation in value of the security by his negligence, though there is not a total loss. Here the note at all times as a personal demand was worthless. The note had a value to the extent of the market value of the land when it was turned over to the administrator *de bonis non.* He retained it for a period of three years and over, during which time the land might have been sold by a simple sale made by the trustee. In view of all this, and the principle of law before stated, we are of the opinion that the Booker estate should be held accountable for the depreciation in the value of the security, instead of the full amount of the note and interest. The Booker estate should be charged with, or rather have no credit for, the taxes paid on this land, for it should have been converted into money long before 1875. The Booker estate will, therefore, stand charged with the note and interest, as stated in the inventory, $4,318.50, but no more, for we are not satisfied that there ever was a time when a sale of the land would have produced a greater amount. The estate, instead of being credited with the above amount, will be credited with two thousand dollars, the market value of the land in 1878, when Lakenan received the note. The Booker estate is entitled to five per cent. commission on legal disbursements, which commissions will be $1,973.90, whereas the estate is only credited with $1,096.47. The difference should be added to the credits. The Booker estate will thus stand indebted to the Grove estate in the sum of $2,179.34, for which amount, with interest thereon at the rate of six per cent. per annum, from July 15, 1879, judgment should be entered.

4. So far as interest on moneys in the hands of the

late executor is concerned, it is sufficient to say that there was no more in his hands at any time than he might well have retained, especially in view of the fact that there was a contest over the will during the entire administration.

The judgment is reversed and the cause remanded, with directions to the circuit court to enter up a judgment in conformity herewith. All concur.