MYERS *et al., Plaintiffs in Error*, v. MYERS *et al.*

1. **Administration**: SETTLEMENT: INTEREST: DUTY OF PROBATE COURT. It is the duty of probate courts at each settlement to exercise equitable control in requiring administrators to account for interest on moneys loaned or used by them. This power must be exercised equitably and in view of all the circumstances.

2. ——— : BALANCES IN HANDS OF ADMINISTRATORS. Where it appears that the balances in the hands of administrators, as shown by their annual settlements, include notes and accounts, the interest upon which is accounted for by them, and there is not an unreasonable amount of money on hand, and it does not appear that they loaned or used any of the money of the estate, they should not be charged with interest on such balances.

3. ——— : DEGREE OF CARE. An administrator must use all reasonable diligence in collecting the debts due the estate, and if a demand is lost for failure on his part to use that care which a prudent person would use in respect of his own affairs, he must account for the loss.

4. ———. Before administrators can be charged for a failure to collect a note due the estate, it must be shown that the note came to their possession, or that there was, to their knowledge, such a subsisting debt due the estate.

5. ——— : ANNUAL SETTLEMENTS. Annual settlements of executors, administrators and guardians, are not conclusive. They are open and subject to review and correction at the final settlement.

6. ——— : ———. When a probate court allows a disbursement in an annual settlement, the allowance thus made is *prima-facie* evidence of the correctness of the account. The annual settlements are therefore *prima-facie* evidence in favor of the administrator. To entitle him to a credit for a disbursement in a final settlement, it is sufficient for him, in the first instance, to show that it was allowed in an approved annual settlement.

7. ——— : NOTES. Notes executed jointly by a decedent and another, and which have been allowed against and paid in full by the administrator of the decedent's estate, must, in the absence of any showing to the contrary, be presumed to be what they purport to be, joint debts created for the equal benefit of the parties. This being the fact, the administrators should use all reasonable efforts to enforce contribution, and the burden of proof is on them to show that they did so, or to show that there was in fact no liability to the estate.

8. **Practice**: BILL OF EXCEPTIONS. Where a plaintiff in error procures time in vacation of court in which to file a bill of exceptions, and files the same in open court before the expiration of the time, the same is properly made a part of the record.

9. —— : ——. In making out a skeleton bill of exceptions, it is sufficient to identify motions and documentary evidence and then call for the same. They then become a part of the bill and may be copied in full in making out the transcript for the appellate court.

*Appeal from Scotland Circuit Court.*—HON. B. E. TURNER, Judge.

REVERSED AND REMANDED.

*Frank P. Hall* and *McQuoid & Clancy* for plaintiffs in error.

(1) An administrator must use that measure of care, diligence and caution in the management, collection and protection of the estate that a prudent and careful business man would use in the care and management of his own business. If he neglect so to do and the estate is injured thereby he is chargeable with the amount lost. *Merrit v. Merrit*, 62 Mo. 157; *Julian v. Abbott*, 73 Mo. 580; G. S. 1865, p. 507, secs. 17, 18, 19; *Gamble v. Gibson*, 59 Mo. 585. The administrators should have charged themselves with the amount of the note on A. S. Myers & Bro., erased from the inventory. If they did not collect the principal and interest of that note it was the grossest kind of neglect. Voucher one in the first settlement was a partnership note executed by "M. & A. Myers" and the firm name was signed by Alfred S. Myers. It was the duty of the administrators to compel Alfred S. Myers to pay the estate one-half thereof. (2) If an administrator charges himself with a balance of money on hand from year to year and makes no showing as to what was done with the money, the law presumes that the administrator has used it as his own and in that event he is chargeable with interest.

*Camp v. Camp*, 6 Mo. App. 563 ; s. c., 74 Mo. 192 ; *Julian v. Wightman*, 73 Mo. 569 ; *Clyde v. Anderson*, 49 Mo. 37 ; *Scott v. Crews*, 72 Mo. 261 ; *In re Davis*, 62 Mo. 450 ; *Williams' Adm'r v. Petticrew*, 62 Mo. 460 ; G. S. 1865, p. 493, secs. 54, 55, 56.   (3) The joint makers of a note are *prima facie* liable and will be considered each as principals unless a contrary fact be established by evidence.   *Cahn v. Dutton*, 60 Mo. 297 ; *Sample v. Turner*, 65 Mo. 696.   (4) At the final settlement all previous errors and mistakes are open to correction and adjustment.   The vouchers objected to by plaintiffs did not in and of themselves establish for the administrator a *prima-facie* case of their correctness.   The burden of proving that the credits were correctly and properly taken rests on the administrator.   For instance, he must prove that Alfred S. Myers was not liable to pay one-half of the three joint notes complained of.   Also, he must prove that the credits objected to by plaintiffs were proper and not barred by the statute.   *State to use v. Roeper*, 82 Mo. 57.

*Smoot & Pettingill* for defendants in error.

The evidence must be preserved in the original bill of exceptions.   The clerk cannot copy anything into the record which he sees fit.   Mere reference to motions in the original bill of exceptions will not suffice.   They must be copied in full.   *Jefferson City v. Opel*, 67 Mo. 394 ; *Robinson v. Hood*, 67 Mo. 660.   The mere statement of the circuit judge in the bill of exceptions that the bill of exceptions was signed, sealed and made a part of the record, is not sufficient, there being nothing in the record to show that this was done.   The bill of exceptions must be authenticated by a record entry. *McGrew v. Foster*, 66 Mo. 30 ; *Pope v. Thompson*, 66 Mo. 661.

BLACK, J.—William A. and James T. Myers were appointed administrators of the estate of Michael Myers, their father, in 1858. They, as such administrators, made six annual settlements, and in 1865, filed their seventh and final settlement. This final settlement was continued by the county court to the next term. The settlement was duly recorded by the clerk ; and in his docket, and opposite this estate and under the words "how disposed of," is written by the clerk, "settled." The records of the county court, however, do not show any order of the court approving this settlement. James T. Myers, who was the active administrator, died in 1867.

The plaintiffs in error are the children of a deceased daughter of Michael Myers, and at their instance, the probate court of Scotland county ordered William A. Myers, the surviving administrator, to make final settlement. This order was made in 1884, nearly twenty years after the final settlement had been filed, and was supposed to have been duly approved. On March 4, 1884, and in obedience to this order, the surviving administrator, for final settlement, filed a statement, which is the same as that filed in 1865, showing a balance of one dollar due the administrators, and on the sixth of the same month he filed an amended final settlement which shows a balance of $573.26 due the estate. This difference is due to the fact that one item of credit in the former settlement was disallowed, and some reductions made in fees allowed the administrators, thus showing a balance against them, to which eighteen and one-half years' interest was added. This amended final settlement was approved by the probate court, and the objectors, the plaintiffs in error, appealed to the circuit court, where, upon a trial anew, the judgment was the same as in the probate court. They then sued out a writ of error, from the St. Louis court of appeals, and the cause was transferred to this court.

The assigned errors to be noticed are that the administrators should be charged : (1) With interest on moneys in their hands pending the administration; (2) the amount of an uncollected note on A. S. Myers & Bro., due February 4, 1858; (3) with one-half of three notes which were executed by the deceased Michael Myers, and A. S. Myers, and payable respectively to Collins, Gale and Davis; (4) that the court erred in allowing the administrator certain credits taken and allowed in the annual settlements.

1.   The facts in respect of the first of these alleged errors are these: The administrators, in their first annual settlement, charge themselves with $6,557.29. In this amount they include the aggregate footing of the inventory of a long list of notes and accounts due the estate, amounting to over six thousand dollars. They then take credit for disbursements. The balance is then carried into the next settlement, and so on in the subsequent settlements. By this method of stating the accounts, there appears to have been in their hands, at the first settlement, $4,540.10. The balance diminishes in the subsequent settlements, and in the fifth, there appears in their hands a balance of $2,296.20, and in the sixth, there is in their hands but $511.77; but at this settlement they were given credit for five or six hundred dollars on account of worthless notes and accounts.

Now, it is plain to be seen, that these balances in the hands of the administrators do not represent money ; for in them is included uncollected notes and accounts. Indeed, the balances to the sixth settlement include some five or six hundred dollars of worthless notes, shown to have been worthless on the trial of this case. The administrators charge themselves with interest collected on notes and accounts, to the amount of $1,027, thus again showing that the balances do not represent money. Whilst it cannot be told, from these settlements, just how much money was on hand from

time to time, sufficient appears to satisfy us on an investigation had at this late day, that it was no unreasonable amount.

Again it is the duty of the probate court, at each settlement to exercise an equitable control in requiring administrators to account for interest on moneys of the estate loaned or used by them. This is the statute ( G. S. 1865, p. 493, sec. 55) and the very statement of the rule shows that it is not an iron one. The power is to be exercised equitably and in view of all the circumstances. It does not appear that these administrators loaned or used any of the moneys of the estate, and under the circumstances disclosed, they should not be charged with interest on the balances appearing on the face of the settlements. The case is wholly unlike those cited in the brief of appellants.

2. In the inventory filed by the administrators, this entry appears, "Note on A. S. Myers & Bro., not come to hand, supposed to be among the papers of Michael Myers' estate, due February 4, 1858."

It seems figures representing the amount of the note and the accrued interest, namely three hundred and thirty-seven dollars and sixty-four dollars, were set down in the inventory, but they were erased. On the other hand, it also appears that these figures were erased before the inventory was completed, and the amounts are not carried into the footing. On this evidence, and proof of the solvency of A. S. Myers, the objectors rest their case. W. A. Myers, the surviving administrator, says his brother James did nearly all of the business in settling the estate, that when he collected any of the notes he turned the money over to James. He says: "My attention was first called to that erasure yesterday. I have no knowledge concerning the matter whatever."

It is to be remembered that James Myers, the administrator who was most familiar with the affairs of

this estate, cannot speak.   He died sixteen or seventeen years before these objectors brought on this contest. Aside from the entry in the inventory, there is no evidence that deceased ever held such a note.   The fact that the figures showing the amount were erased, before the inventory was completed, shows that the administrators did not intend to charge themselves with it.   It is not shown that such a note ever came to their hands ; nor does it appear that the note was a subsisting debt in favor of the estate when the administrators qualified. There can be no doubt but the administrator must use all reasonable diligence in collecting the debts due the estate ; and if a demand is lost for failure on his part to use that care which a prudent person would use in respect of his own affairs, then he must account for the loss.   *Booker v. Armstrong,* 93 Mo. 59 and cas. cit. But here it does not appear that there was an actual subsisting debt in favor of the estate against A. S. Myers & Co.   Before these administrators can be charged for a failure to collect the alleged note, it must be shown that the note came into their possession, or that there was to their knowledge such a subsisting debt due the estate, and that is not shown by the evidence in this case.

3.   We now pass to the contention that the court should have excluded, on the final settlement, several credits allowed to the administrators in the annual settlements.   The principle of law contended for is that these annual settlements made and approved by the court do not constitute even *prima facie* evidence in favor of the administrator of the correctness of the accounts thus allowed in the annual settlements.   The law is well settled in this state that these annual settlements of executors, administrators and guardians are not conclusive.   They are open and subject to review and correction at the final settlement.   *Picot v. O'Fallon,* 35 Mo. 29 ;   *West v. West,* 75 Mo. 204.

The entire argument in the first of these cases, and a statement contained in the last, would seem to accord to annual settlements the force and effect of *prima-facie* evidence of the correctness of the accounts; but the later case of *State to use v. Roeper*, 82 Mo. 57, may be understood as not going to that extent. There is beyond all doubt a broad distinction between an annual and a final settlement of an administrator. The annual settlement is designed to be an account current, and is made without notice. The final settlement is made after notice is given, and upon its approval the administrator is discharged. Still these annual settlements are not without some force and effect. The administrator must give public notice of his appointment. The time of his annual settlement is fixed by law, and any person interested may appear and resist such settlement, and take an appeal from its allowance, if he desires so to do. Generally notice of an application for the sale of real estate to pay debts must be given, but this is not required when the order is made on an annual settlement made at the proper time. G. S. 1865, p. 500, sec. 47; *Graham v. Day*, 97 Mo. 398 and cas. cit. So that, for some purposes, interested persons must take notice of these annual settlements.

Section 10, of chapter 124, of the General Statutes, is in these words: "Upon every settlement, the executor or administrator shall show that every claim for which disbursements have been made has been allowed by the court, according to law, or shall produce such proof as would enable the claimant to recover in a suit at law." It seems unreasonable that the administrator should produce such proof on annual settlement, get the judgment of the court that the disbursement is one for which he is entitled to a credit, and then this all go for nothing on the final settlement. The more reasonable conclusion is, that when the probate court allows a disbursement in an annual settlement, the allowance thus made is *prima-facie* evidence of the

correctness of the account. The annual settlements are therefore *prima facie* evidence in favor of the administrator. To entitle him to a credit for a disbursement in a final settlement, it is sufficient for him, in the first instance, to show that it was allowed in an approved annual settlement. This we believe to be in accord with the practice throughout the state, and any other rule, in a case like the present, and indeed in most cases would work great injustice and hardship. This conclusion disposes of the objection made to the credits allowed the administrator in this case.

4. As to the third assigned error, the facts disclosed are these: Michael Myers and Alfred A. Myers, by the name of "M. & A. Myers," made a note to Collins for $46.77. They executed two other notes, each signing his name in full, one for one thousand dollars payable to Gale, and the other for $734.70, payable to Davis. These notes are all dated in 1856, were allowed against the estate of Michael Myers in 1858, and were paid in full by the administrators. The small one was paid in 1859, and payments were made on the others in 1859, 1860, 1861 and 1862, and the balance due on them seems to have been paid in 1864. There can be no doubt but the administrators were entitled to credit for the amounts paid on these notes; and the only question is whether they should be charged for the one-half of the amounts so paid because of a failure to enforce contribution from Alfred S. Myers.

The further evidence shows that Michael Myers, the deceased, and Alfred S. Myers, were partners in a mercantile business in the years 1855, 1856 and 1857; that Alfred was solvent from 1857 to 1863, and that he was dead at the time of this contest. But it does not appear that those notes were made for partnership purposes, though it may be presumed that the small one was made for such purpose, since it is made in a firm name. This presumption cannot prevail as to the two

large notes. It does not appear what were the respective interests of the partners. Indeed there is no evidence, save the face of the notes, to show what the liabilities of these persons on these notes were, as between themselves. In the absence of any showing we must presume that these notes are what they purport to be, namely, joint debts created for the equal benefit of the parties. This being the fact, the administrators should have used all reasonable efforts to enforce contribution, and the burden of proof is upon them to show that they did use such efforts, or to show that there was in fact no liability to the estate. *Booker v. Armstrong, supra.* No such showing was made or attempted so far as disclosed by the bill of exceptions, and the judgment must therefore be reversed.

5. The defendant in error contends, and indeed the only points made in the brief filed in his behalf are, that the merits of the case cannot be considered here, because there is nothing to show that the bill of exceptions was made a part of the record; and because the documentary evidence, such as inventories, settlements and the like are not preserved by the bill of exceptions. The first of these points is based upon a misconception of the fact and the law. The amended transcript shows that the motion for new trial was overruled in November, 1884, and by agreement of parties, time was given plaintiffs in error to file bill of exceptions in vacation on or before February 1, 1885. Had the bill of exceptions, signed by the judge, been filed with the clerk in vacation on or before the last-named date, it would have thereby become a part of the record; but it was in point of fact filed in open court in January, 1885, and made a part of the record by the order allowing it to be filed.

As to the other point: The bill of exceptions as filed did not contain copies of the inventories, settlements, vouchers and other documents read in evidence, nor of the motion for a new trial; but they were

described and then called for by directing the clerk to "here copy the same." In making out the skeleton bill, it is sufficient to identify the motions and documentary evidence and then call for the same, as is done in this case. They then become a part of the bill and may be copied in full in making out the transcript for this court; and so we have heretofore ruled. *Crawford v. Spencer*, 92 Mo. 498.

The judgment is reversed and the cause remanded. SHERWOOD, J., absent; the other judges concur.