THE STATE v. CHARLES WALKER, Appellant.

Division Two, March 6, 1906.

1. **BILL OF EXCEPTIONS: Call for Oral Evidence.** There is no
authority for an appellant to make a call upon the clerk of the
circuit court to insert the oral evidence in the bill of ex-
ceptions and where, under such a call, a purported copy of the
oral evidence is filed in the appellate court, but there is noth-
ing to indicate in the skeleton bill of exceptions filed that such
copy was the testimony which the clerk was directed to insert
in the bill of exceptions, or that it had ever been presented
to the judge who signed the bill of exceptions, it will not be
considered.

2. ———: **Filing and Signing.** The record must show the filing of the bill of exceptions, and if it is filed in vacation, the endorsement of the clerk must show that it was filed within the time allowed. The bill of exceptions is no part of the record until signed and filed by leave of court.

3. **PERJURY: INFORMATION.** An information, set out in the statement of the opinion, *held* sufficient to charge the offense of perjury.

Appeal from Douglas Circuit Court.—*Hon. Jno. T. Moore,* Judge.

AFFIRMED.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) The information, which was duly verified, is in proper form and contains the necessary averments. It states the court and the trial of the cause in which the perjury is alleged to have been committed; the nature of the action then pending; the fact that defendant was sworn by an officer duly authorized; the substance of his evidence; and the further allegation that the same was false, and that defendant knew at the time that the same was false. State v. Blize, 111 Mo. 471; Williams v. State, 68 Ala. 555; Roscoe's Crim. Evid., sec. 18; State v. Strat, 1 Murph. (N. C.) 124; State v. Faulkner, 175 Mo. 568; State v. Day, 100 Mo. 249; People v. Grimshaw, 33 Hun 505; Washington v. State, 22 Tex. App. 32; 2 Bishop Crim. Law, secs. 1032-1038; 1 Greenl. on Evid., sec. 195; 2 Wharton's Crim. Law, sec. 1278; Dilcher v. State, 39 Oh. St. 133; State v. Brown, 102 N. W. 802; State v. Cary, 159 Ind. 507. (2) Defendant has not properly preserved for review the alleged errors occurring during the progress of the trial. None of the evidence is contained in the bill of exceptions, neither are the instructions for the State nor for the defendant.

GANTT, J.—At the September term, 1904, of the circuit court of Douglas county, Missouri, the prosecuting attorney of said county filed in said court the following information:

"In the circuit court of Douglas county, Missouri, at the September term, 1904.

"State of Missouri,

vs.

"Charles Walker.

"Fred Stewart, prosecuting attorney within and for the county of Douglas and State of Missouri, upon his oath informs the court that heretofore, to-wit, at the county of Douglas and State of Missouri, at the March term of the circuit court of Douglas county, on the 2nd day of April, 1904, before the Hon. Asbury Burkhead, judge of the 31st judicial circuit of the State of Missouri, and ex-officio judge of said Douglas County Circuit Court, a certain action wherein the State of Missouri was plaintiff and James Turner and Victory Williams were defendants upon an information preferred against them for the crime of taking away a female under the age of eighteen years from the care of her father for the purpose of concubinage, came on to be tried in due form of law, the said court then and there having competent authority in that behalf, and the said issue was then and there tried by a jury of the county in that behalf duly sworn and taken between the parties aforesaid; upon which said trial one Chas. Walker then and there appeared as a witness for and on behalf of the said James Turner and Victory Williams, the defendants in the action aforesaid, and was then and there duly sworn and took his oath before the said court, which said oath was then and there administered to the said Chas. Walker by Hon. Asbury Burkhead, judge of said court as aforesaid, having full power and competent authority to administer the said oath to the said Chas. Walker in that behalf,

that the evidence which he, the said Chas. Walker, should give to the court there and to the said jury so sworn as aforesaid, touching the matter then in question between the said parties should be the truth, the whole truth and nothing but the truth, and that at and upon the trial of said issue so joined as aforesaid between the parties aforesaid, it then and there became and was a material question whether a certain birth record introduced in evidence in the cause then being tried and showing that one India or Dude Hatfield, the prosecuting witness in said cause, was born in 1887 had been changed since the aforesaid action had been commenced; and that the said Chas. Walker then and there on the trial of the said issue upon his oath aforesaid feloniously, willfully, corruptly and falsely, before the court and jury aforesaid, did depose and swear in substance and to the effect following: That is to say, that he, the said Chas. Walker, was at the home of India or Dude Hatfield, meaning the prosecuting witness in the aforesaid cause, a few days before the preliminary trial of said cause and that William Hatfield, the father of the said India or Duke Hatfield, got the record of the births of the children and got one Sol Walker, who was present, to read it and that he, the said Chas. Walker, heard it read, and that according to said record the said India or Dude Hatfield was born in 1884 or 1885, that Mr. Hatfield, meaning the said William Hatfield the father of the said India or Dude Hatfield, then took the said record and put it into a cigar box; and that he, the said Chas. Walker, was at the home of the said William Hatfield the next day after the said William Hatfield had placed the said birth record in the said cigar box, and that one John Milt Spurlock and one John Addis were there (meaning that the said John Milt Spurlock and the said John Addis were at the home of the said William Hatfield) and that the said William Hatfield came into the house and got a paper out of the cigar box (meaning

the same cigar box that the said William Hatfield had placed the birth record in) and that they went around to the south end of the house (meaning the said William Hatfield, John Milt Spurlock and John Addis) and that he, the said Chas. Walker, stepped around there, and that they (meaning the said William Hatfield, John Milt Spurlock and John Addis) were scratching something off said paper with a pocket knife, the said Chas. Walker then and there well knowing that the said birth record did not show when read in his presence that the said India or Dude Hatfield was born in 1884 or 1885, and that he was not at the home of the said William Hatfield a few days before the preliminary trial of said cause when John Milt Spurlock and John Addis were there, and that he did not see William Hatfield take any paper out of said cigar box and take it around to the south end of the house, and that he, the said Charles Walker, did not see the said William Hatfield, John Milt Spurlock and John Addis scraping something off the said paper with a knife, and that the said Chas. Walker then and there knew that the said testimony by him given under oath as aforesaid to be false and corrupt. Whereas in truth and in fact the said birth record did show that the said India or Dude Hatfield was born in 1887, and the said Chas. Walker did not see the said William Hatfield take the said paper out of a cigar box a few days before the preliminary trial of said cause, and the said William Hatfield did not take the said paper around the south end of the house and that neither the said William Hatfiell nor John Milt Spurlock nor John Addis at that or any other time scraped anything off of said paper as aforesaid at the time and place aforesaid. And so the prosecuting attorney aforesaid, upon his oath aforesaid, does say that the said Chas. Walker, on the said 2nd day of April, 1904, at the county and State aforesaid, upon the trial aforesaid, did, in manner and form aforesaid, feloniously, willfully, corruptly and falsely commit wil-

ful and corrupt perjury against the peace and dignity of the State.

"FRED STEWART,
"Prosecuting Attorney.

"Fred Stewart, prosecuting attorney, makes oath and says that the facts stated in the foregoing information are true according to his best knowledge, information and belief.

"Subscribed and sworn to before me, this 14th day of September, 1904.

"G. B. WILSON, circuit clerk."

At the March term, 1905, of the said circuit court, the defendant was duly arraigned and entered his plea of not guilty, and the case was tried to the court and a jury, and the jury found the defendant guilty and assessed his punishment at two years in the penitentiary. Motions for new trial and in arrest of judgment were filed, heard and overruled, and the defendant was sentenced to the penitentiary in accordance with the verdict of the jury. An appeal was granted to the defendant to this court and leave was given him to file a bill of exceptions within ninety days after the 30th of March, 1905.

I. The defendant is not represented in this court by counsel, but it appears from the record before us that within the time alleged for the filing of the bill of exceptions, the defendant tendered to the judge of the circuit court of said county, to-wit, on the 9th day of May, 1905, a paper writing, which purports to be a bill of exceptions, and that paper has been forwarded to this court as a part of the record. There is no file mark or other evidence showing or tending to show when said alleged bill of exceptions was filed in the office of the clerk of the circuit court of Douglas county. From the fact that the clerk transmits said paper in its original form along with the record in this case, it evidently was deposited with him at some time. This alleged

bill of exceptions is in a skeleton form, and it recites that the plaintiff, the State of Missouri, produced testimony to the jury tending to prove that the defendant, Chas. Walker, at the trial of the cause wherein the State of Missouri was plaintiff, and James Turner and Victory Williams were defendants, at the April term of the circuit court of Douglas county, in the year 1904, falsely testified in regard to the age of one "Dude" Hatfield as read to him by one Sol Walker, and also testified falsely stating that he saw John M. Spurlock and John Addis scratch on a piece of paper with a pen-knife, which paper purported to be the record of the birth of "Dude" Hatfield and other children of William Hatfield, which testimony was in words and figures as follows: (here the clerk will insert all testimony in chief on the part of the State)." No testimony whatever is copied into said purported bill of exceptions, but the official stenographer of that circuit, it appears, did file a typewritten copy of what purports to be the evidence taken by one Samuel H. Gillalan, official stenographer of the 31st judicial circuit of Missouri, as made by him from his shorthand notes taken the 2nd day of April, 1904, at the trial of the cause of the State of Missouri against Jim Turner and Victory Williams, in the Douglas County Circuit Court, and also a copy of what purports to be the oral testimony taken by the official stenographer of said circuit at the trial of the cause of the State of Missouri against Chas. Walker, in the Douglas County Circuit Court on the 26th day of March, 1905, with the clerk of the circuit court of said county in his office on April 20, 1905, but there is nothing to indicate in the said skeleton bill of exceptions that the foregoing testimony was the testimony which the clerk was directed to insert in said bill of exceptions, or that it had ever been presented to the judge of the circuit court, who signed the bill of exceptions.

In Tipton v. Renner, 105 Mo. 5, BLACK, J., speaking for this court, said: "The practice of filing a skeleton bill of exceptions in the circuit court has long prevailed in this State, and is now well established. Thus, it is sufficient to say plaintiff read in evidence a deed, deposition on file or other document, *describing the same, so there can be mistake as to its identity,* and concluding, 'which is in words and figures as follows,' or with words of like import. This will be sufficient to authorize the clerk to fill out the bill by inserting the document. [Crawford v. Spencer, 92 Mo. 498; Myers v. Myers, 98 Mo. 262, 271.] . . . . . It is the business of the judge who tried the case to say what evidence was introduced, and he cannot devolve this duty upon the clerk, the reporter or counsel. It is perfectly plain that he cannot sign a bill as a true one until the parol evidence is written out and made a part thereof. He ought not to sign it until this is done, and if he does sign the bill before such evidence is written out and inserted, the evidence must be disregarded in this court." Section 866, Revised Statutes 1899, as amended in 1885, contains this proviso: "Provided, the bill of exceptions so filed contains a direction to the clerk to copy the same, and the same are so copied into the record sent up to the appellate court." This proviso, it has been held, permits and requires the clerk, if directed, to copy into the bill of exceptions certified to the appellate court the motion for new trial, in arrest of judgment, or instructions filed in the lower court. But it does not authorize the clerk to determine and certify what the oral evidence in the case is. [State ex rel. Harber v. Wear, 101 Mo. 414; State v. Harvey, 105 Mo. 316; Carlin v. Wolff, 154 Mo. 544.]

In view of the statute and the above cases construing the same, there was and is no authority for an appellant to make a call upon the clerk to insert the oral evidence in the bill of exceptions, as was done in this case, and therefore it must be held that the defendant

in this case has not preserved and brought the evidence in this cause before us in such a form that we can consider it, even if it should be conceded that there was a bill of exceptions filed in the office of the clerk of the court within the time allowed by the court. It is equally clear, moreover, that there is nothing in this record that will enable us to identify the so-called bill of exceptions as a part of the record. It has been uniformly ruled by this court that the record proper must, if in term time, show the filing of the bill of exceptions, and, if the time be extended in term time, the record proper must show it, and the endorsement of the clerk in vacation must show the filing of the bill of exceptions within the time allowed; that the recital in the bill cannot supply that defect, as, in the very nature of the case, the bill of exceptions is no part of the record until signed and filed by leave of the court. [Ricketts v. Hart, 150 Mo. l. c. 68; Walser v. Wear, 128 Mo. 652; St. Charles ex rel. v. Deemar, 174 Mo. 124-5, and cases cited; Forbs v. Railroad, 107 Mo. App. 661.]

And, therefore, the calls made in the alleged bill of exceptions for the motions for new trial and in arrest of judgment and the instructions must be held clearly insufficient to justify a review of them by this court. And the same is true as to the alleged improper exclusion of the evidence of certain witnesses offered by the defendant as experts in the case. In this state of the record, the only matter left for review in this court is the sufficiency of the record proper to sustain the judgment of the circuit court.

II. The information is sufficient. By section 2039, Revised Statutes 1899, it is provided: "In any indictment for perjury, it shall be sufficient to set forth the substance of the offense charged, and by what court or before whom the oath was taken, averring such court or person to have competent authority to administer the same, and that the matter or testimony alleged to be

false was material to a certain matter or issue named, without setting forth the particular facts showing its materiality, together with the proper averments to falsify the matter wherein the perjury is assigned, without setting forth any part of the record, proceeding or process, or any commission or authority of the court or person before whom the perjury was committed, or the form of the oath or affirmation, or the manner of administering the same.'' In this information the materiality of the issue being tried and to which the evidence of the defendant related, appears upon the face of this information. The information alleges that the issue on trial was whether James Turner and Victory Williams were or not guilty of the crime of taking away a female under the age of eighteen years from the care of her father for the purpose of concubinage. It specifically alleges the court in which said cause and trial were had, and the materiality of the issue is so stated that the circuit court of Douglas county could determine as to its materiality, and it sets out with sufficient particularity the facts to which the defendant testified bearing directly upon the issue, and then negatives the truth of the facts sworn to, and assigns perjury upon them. [State v. Cave, 81 Mo. 450; State v. Huckeby, 87 Mo. 414; State v. Faulkner, 175 Mo. 546; State v. Powers, 136 Mo. 194.]

The organization of the court at its regular March term, 1905, is in due form, the oath was administered to the sheriff and his deputies as required by law as to the summoning and returning of jurors to serve at the said term; the arraignment of the defendant, and impaneling of the jury, and the return of the verdict, and the sentencing of the defendant to the penitentiary for two years, all appear in due form. As no errors appears in the record proper, the judgment of the circuit court must be and is affirmed.

*Burgess* and *Fox, JJ.,* concur.