MARY    HOWARD,    Appellant,    v.    GARRARD
STRODE, Public Administrator, In Charge of
Estate of LACLEDE J. HOWARD, Deceased.

### Division Two, April 9, 1912.

1. **DOWER: Admeasurement: Personalty: Child's Part.** The
statutory provisions for the admeasurement of dower (Sec.
367 *et seq.*, R. S. 1909), do not apply to personalty; and the
child's part in the personalty given by Sec. 349, R. S. 1909,
to the wife, is not dower in the true sense of the term. The
wife under that section is not a dowress, but a distributee.
A suit in the probate court to obtain an order directing the
administrator to turn over to plaintiff, as the widow of dece-
dent, a child's part in the net estate, is not a suit for the ad-
measurement of dower.

2. ———: ———: **Child's Part: Trial by Jury.** The plaintiff,
claiming to be the widow of decedent, is not entitled to a
trial by jury, either in the probate court or after appeal in the
circuit court, of her motion asking that a child's part of the net
proceeds of the estate be paid over to her upon final settle-
ment. A   right to a jury trial to establish her claim to be
adjudged the wife of decedent and therefore to be considered
a distributee, did not exist at common law, nor by statute
prior to the adoption of the Constitution of 1875, nor was it
given by that Constitution. All controversies growing out of
final settlements in the probate court, and concerning the
widow's rights to the personalty, are to be tried by the court
without a jury.

3. **DIVORCE: Granted by Another State: Recognized in this
State.** The validity of a decree of divorce granted upon con-
structive notice by a court of competent jurisdiction in another
State wherein the defendant never had a matrimonial domicile,
is recognized in this State; and there is nothing in the case
of Haddock v. Haddock, 201 U. S. 562, which nullifies that
policy. All that decision holds is that a State, which refuses to
recognize the validity of such foreign divorces, cannot be
compelled to recognize them by the full-faith-and-credit clause
of the U. S. Constitution.

4. ———: ———: **Incomplete    Record:    Constructive    Notice.**
Where the decree of the foreign court of general jurisdiction
states in effect that legal service was had by publication, a
prima-facie case of due and legal service is made out, author-
izing the introduction of the decree as evidence establishing

the fact that the plaintiff therein had been granted a divorce and that the marital relation had been dissolved, and establishing his status as a witness.

5. ————: **Competency of Husband to Testify: Deposition Taken Before Decree.** A husband who has been divorced from his wife is thereafter competent to testify that the claimant to a child's share in the estate of a deceased third party was married to the witness on a certain date; and a deposition of said husband, in which he so testifies, taken prior to the divorce decree, but not offered in evidence until after the decree was rendered, is competent. The competency of a deposition is to be determined by the status of the witness at the time the deposition is offered in evidence. If the witness would himself be competent to testify, then his deposition, whatever may have been his marital status at the time it was taken, is competent. The competency of a husband or wife as a witness depends upon whether the marriage relation exists at the time of the trial (except as to confidential relations).

6. **EVIDENCE: Entries in Books: Whereabouts of Entrant.** Entries in order books of a wholesale establishment made by a person in the ordinary course of his business are, in case of his death, admissible for the purpose of showing where such person was at the date which such entries bear—in this case as showing that Laclede J. Howard, deceased, in whose handwriting the orders, for goods, bearing date of January 15, 1883, were made in his company's book, in their regular order, was not the "Henry Howard" to whom claimant was married at Decatur, Illinois, on that date. And entries in the company books of the proceedings of the stockholders and board of directors at meetings held on January 16th made by said deceased president and secretary, are competent, as the best evidence obtainable, after all the other stockholders and directors there present are dead.

Appeal from  St. Louis City  Circuit  Court.—*Hon. William M. Kinsey,* Judge.

AFFIRMED.

*John J. O'Connor* for appellant.

(1)  Plaintiff was entitled to a trial by jury of her suit for dower in the personal property owned by her deceased husband at the time of his death. Sec. 2937, R. S. 1899; Shipp v. Snyder, 121 Mo. 155; sec. 372,

R. S. 1909.    Sec. 2937, R. S. 1899, gives a new right to the widow, "dower in personal property of the deceased husband," but prescribes no remedy, and when a right is given without a remedy, the person to whom the right is given may select any remedy suitable.  Sedgwick, State and Court Law (2 Ed.), p. 74; Young v. Renshaw, 102 Mo. App. 184.    (2)  The trial court erred in admitting over plaintiff's objection the deposition of T. J. Miller in evidence.  Miller claimed to be the husband of plaintiff at the time he gave said deposition, and his deposition covered matters and things which he testified occurred during the time that he alleges he was her husband, and as he was not a party to this action, he was incompetent as a witness, and his testimony was incompetent for any purpose.    Sec. 6359, R. S. 1909, provides the only cases in which a husband may testify when he is not a party to the suit, and this is not one of such cases.  State v. Ulrich, 110 Mo. 364; Layson v. Cooper, 174 Mo. 211; Scott v. Burfiend, 116 Mo. App. 71; Kane v. Kane, 79 Mo. App. 339.  The statute does not change the common law rule, except as to the matters therein mentioned; in other respects the husband is still incompetent.  Curd v. Brown, 148 Mo. 95.  Defendant offered the deposition on the theory that Miller was plaintiff's husband, and he is bound by that theory in this court.  State v. St. John, 94 Mo. App. 229.  (3) The trial court erred in admitting, on behalf of defendant, and over the objections of plaintiff, the alleged decree of divorce alleged to be granted to Miller in the Superior Court at Olympia.  Plaintiff was never in Washington, nor was the status of the alleged marriage of Miller ever maintained or sustained in Washington.  Hence the Superior Court of that State never had jurisdiction to render any judgment against plaintiff in said alleged suit.  Haddock v. Haddock. 201 U. S. 562.  It was not a full record, and for that reason it should have been rejected.  Crone v. Dawson,

19 Mo. App. 214; Williamson v. Williamson, 53 Mo. App. 623; Lee v. Lee, 21 Mo. 534. Under the full-faith-and-credit clause of the Constitution of the United States, sec. 1, art. 4, it was not admissible. Adams v. Adams, 188 U. S. 14; Haddock v. Haddock, 201 U. S. 562. Nor was there any statute of Washington offered or read in evidence showing that said Superior Court had jurisdiction to render such a decree on constructive service. Price v. Clevenger, 99 Mo. App. 536; Mfg. Co. v. Long, 54 Mo. App. 149. Moreover, the admission of said decree violated her rights under the Constitution of the United States (Sec. 1, 14th Amendment), in that it took her property without due process of law. Haddock v. Haddock, 201 U. S. 562. (4) It was error to admit in evidence over plaintiff's objections the two order books of the Evans & Howard Fire Brick Co. That company was no party to this suit, and the entries in said books were only hearsay, and not binding on plaintiff. Especially was it error to admit in evidence the minute book of said company over plaintiff's objection; for there was no evidence offered to show when the minutes of the stockholders' meeting, or the minutes of the meeting of the board of directors were actually written into the minute book. For all that the defendant's evidence shows, said minutes could have been written a month after the meetings are said to have been held. Martin v. Nichols, 54 Mo. App. 594; Nelson v. Nelson, 90 Mo. 463; 1 Greenleaf on Evidence, sec. 118; Milling Co. v. Walsh, 108 Mo. 285; Robinson v. Smith. 111 Mo. 205; Bader v. Ferguson, 118 Mo. App. 34.

*Johnson, Houts, Marlatt & Hawes* for respondent; *Block & Sullivan* of counsel.

(1) A decree of divorce in another State, upon constructive service, is valid and binding here. Gould v. Crow, 57 Mo. 203; Anthony v. Rice, 110 Mo. 227. (2)

When a judgment is offered merely to prove the fact of its rendition, the judgment only, and not the entire record, need be produced. Lee's Admx. v. Lee, 21 Mo. 534; Seymour v. Newman, 77 Mo. App. 583; Crone v. Dawson, 19 Mo. App. 218. (3) The Superior Court of Washington, being a court of record, and having assumed jurisdiction to grant a divorce, its right to do so will be presumed. Gould v. Crow, 57 Mo. 202; Anthony v. Rice, 110 Mo. 227; Williams v. Williams, 53 Mo. App. 620. (4) A divorce removes the disqualification as a witness for or against the former spouse, save only as to confidential communications during coverture. Long v. Martin, 152 Mo. 675; State v. Kodat, 158 Mo. 128; McClosky v. Pub. Co., 163 Mo. 27; 30 Am. & Ency. Law (2 Ed.) p. 950; 1 Wigmore on Evidence, sec. 610. (5) The competency of a witness testifying by deposition is controlled by his status at the time of the trial, instead of at the time the deposition is given. Messmer v. McCray, 113 Mo. 390; 13 Cyc. 994; Oliver v. Moore, 13 Heisk. 487; Railroad v. Harper, 60 Ark. 159; R. S. 1909, sec. 6384; Ex parte Livingston, 12 Mo. App. 84; Ex parte Priest, 76 Mo. 232. (6) The order book and minute book of the Evans & Howard Fire Brick Company were admissible in evidence to prove the whereabouts of Laclede J. Howard on Jan. 15 and 16, 1883. Comm. Co. v. Bank, 107 App. 435; Knapp v. Trust Co., 199 Mo. 669; Jonesboro Co. v. United Co., 117 App. 153; Clark v. Church, 21 Hun, 98; Abbott's Trial Briefs "Mode of Proving Facts," p. 31; Nichols v. Webb, 3 Wheat. 332; Leland v. Cameron, 31 N. Y. 121; Welsh v. Barrett, 15 Mass. 386; 2 Wigmore on Evidence, p. 1880, sec. 1518 (b), p. 1890, secs. 1523-1528; 9 Am. & Eng. Ency. Law (2 Ed.), p. 895; 2 Wigmore on Evidence, sec. 1074 (b), p. 1267. They were also admissible as specimens of the hand-writing and signature of Laclede J. Howard for purpose of comparison with the marriage record at Decatur. R. S. 1909, sec. 6382.

(7) The procedure which we inherited from England for the assignment of dower was a chancery proceeding, and not a common law proceeding. Munday v. Munday, 4 Brown's Ch. Rep. 295, S. C. 2 Vesey 122. The jury mentioned in the statute regulating proceedings to assign dower is discretionary with the court. R. S. 1909, sec. 372. Our statute, regarding a jury in dower cases, is expressly limited to dower in real property. R. S. 1909, sec. 367. The right of a widow in the personal estate of her deceased husband is not dower; she is, as to such, a distributee. Bryant v. McCune, 49 Mo. 547; Weindel v. Weindel, 126 Mo. 644; Hastings v. Myers, 21 Mo. 521; Griffith v. Canning, 54 Mo. 284; Woerner's Administration, 229. The claims of widows to shares of the personal estates of their deceased husbands were not being tried by juries when the Constitution of 1875 was adopted. Hastings v. Myers, 21 Mo. 519; McFarland v. Admr., 24 Mo. 156; Hayden v. Admr., 23 Mo. 398; Bryant v. McCune, 49 Mo. 546; Cummings v. Cummings, 51 Mo. 263; Downey v. Bauer, 68 Mo. 155; Devin v. Patchen, 26 N. Y. 445; Bradstreet v. Bradstreet, 64 Me. 209; Higbee v. Bacon, 11 Pick. (Mass.) 425. On appeal from the probate court, in cases of this character, the circuit court does not sit as a court of law, and a jury trial is not demandable. Skeen v. Johnson, 55 Mo. 24; Whaley v. Whaley, 50 Mo. 582; In re Meeker's Estate, 45 Mo. App. 194; Ferry v. McGowan, 68 Mo. App. 617; Finley v. Schlueter, 54 Mo. App. 458; Schooler v. Stark, 73 Mo. App. 308; Ansley v. Richardson, 95 Mo. App. 334; Pearson v. Haydell, 87 Mo. App. 499; Stevens v. Larwill, 110 Mo. 149; 24 Cyc. 148. The widow is a distributee of the personal estate and obtains her share of the estate, less debts, etc., on final settlement like any other distributee. Straat v. O'Neill, 84 Mo. 73; Cox v. Admr., 3 Mo. App. 848; Hastings v. Admr., 21 Mo. 521; Griffith v. Canning, 54 Mo. 284.

FERRISS, P. J.—This cause was begun by filing on August 23. 1905, the following motion in the probate court of the city of St. Louis:

### IN THE PROBATE COURT.

State of Missouri, ⎱
                    ⎰ ss.
City of St. Louis ⎰

In the matter of Laclede J. Howard, deceased.

Now comes the undersigned, the widow of Laclede J. Howard, deceased, and respectfully shows to the court that at filing of the last annual settlement filed in this court on the 20th day of June, 1904, by Garrard Strode, public administrator, in charge of the estate of her said deceased husband, there was in the hands of said administrator, and unexpended, money, bonds, stocks and other personal property belonging to said estate in excess of the sum and value of $198,825; that said administration has been in course and pending in this court since the 15th day of May, 1903; that all the assets of the estate have been fully collected, and all the demands made or that can be made agreeable to law against said estate have been paid, and that said estate has been fully administered upon, but that no final settlement has been made by said administrator, and that she is informed and believes that there is now or should be now in the hands of the administrator, after paying all claims and demands allowed against said estate and the costs of administration, money, bonds, stocks and other personal property belonging to said estate in excess of $218,000, and that deceased left surviving him and still living, one child, a minor, and the undersigned, his widow, and she further states that as the widow of deceased she is now entitled to receive a child's part or one-half of all the personal property owned by her said husband at the time of his death, as provided by section 2937, Revised Statutes 1899, but that she has never received any part thereof.

Wherefore, the undersigned moves the court for an order on said Garrard Strode requiring him to make final settlement of his administration of said estate, and that upon the filing and hearing thereof, the court may set out her share of dower in all the personal property belonging to the estate of her said husband and owned by him at the time of his death, and which passed into the possession or under the control of said administrator as shown by the appraisement, inventory and settlements heretofore filed by him in the administration of said estate in this court. And that thereupon this court will make an order of distribution requiring said administrator to pay over to her such sum of money and deliver to her such articles of personal property as it shall determine to be her dower or distributive share in the personal property of said estate.                            MARY HOWARD.
                                        By JOHN J. O'CONNOR,
                                            Attorney for Widow.

After hearing evidence on the motion, the same was denied by the probate judge. Upon appeal to the circuit court, the matter was tried *de novo* by the court upon the evidence, and judgment rendered against plaintiff, from which judgment she appeals.

There was a vast amount of evidence given on both sides, making in all some 1200 pages of record. It will be unnecessary to detail the testimony. A short outline of the facts will suffice as a preliminary statement.

The plaintiff claimed that in 1883 she resided in Palmer, a small town in Illinois; that she was married to Laclede J. Howard, under the name of "Henry Howard," in Decatur, Illinois, on January 15, 1883; that within a very few days he left her; that they again met the following spring, and were together two days, at Litchfield, Illinois; that he then left her a second time, and she did not see him again until the spring of 1903, when she saw him in St. Louis; that some time after 1883 she heard that he was dead; that subsequently she married twice, under the belief that Howard was dead. When she saw him in St. Louis in 1903, she was living with her second *subsequent* husband, one Leafgreen.

It appears from the testimony, without contradiction, that Laclede J. Howard was born in St. Louis in 1847, and always lived there. From 1880 he was president of the Evans-Howard Fire Brick Company, a corporation engaged in business in that city. He died in the spring of 1903, leaving a widow (who died soon after) and one child. He left a large estate which was administered by the public administrator, this defendant.

The defense denied the marriage to plaintiff, and claimed, and offered evidence tending to prove, that on January 15, 1883, the plaintiff was married in Decatur to one Thomas J. Miller, under the name of "Henry Howard." There is no controversy but that a

marriage did take place on that date and at that place between plaintiff and some man who gave his name as Henry Howard. The fact of such marriage was established by the production of the original marriage records. The only question in controversy is as to the identity of the man, plaintiff claiming that it was Laclede J. Howard, and the defense, that it was Thomas J. Miller.

The errors complained of, and urged here, are:

1. Refusal of the court to grant a jury trial.

2. The admission of the deposition of Thomas J. Miller, who testified that he was the man who married plaintiff in Decatur.

3. The admission of certain entries in the books of the Evans-Howard Fire Brick Company.

I. Appellant contends that she was entitled to a trial by jury in the circuit court. Counsel for appellant in his brief refers to the motion as "an action for the assignment of her dower," and claims a right to the statutory method provided by sections 367 et seq., Revised Statutes 1909, for the admeasurement of dower in real estate. Counsel justifies his claim that the child's part given to the widow by section 349, Revised Statutes 1909, is dower in the true sense of the term, by reference to the fact that this section is found in the chapter entitled "Dower" in the Revised Statutes, and also by the fact that the widow's interest in the husband's personalty is referred to as dower in section 117, Revised Statutes 1909, and also in the following cases: Glenn v. Gunn, 88 Mo. App. 426; Hastings v. Myers, Admr., 21 Mo. 519; Cummings v. Cummings, 51 Mo. 261; Griffith v. Canning, 54 Mo. 282; Hasenritter v. Hasenritter, 77 Mo. 162.

The essential nature of a thing cannot be altered by changing its name. The title to the chapter does not control the interpretation of the sections therein. Such title is used as a designation under which to col-

lect associated and analogous laws. The word "dower" has been used somewhat loosely in some of the statutes and decisions. It is clear, however, that the portion of the husband's personalty given to the widow by section 349 is not dower. The wife, under that section, is not a doweress, but a distributee. Dower is something that belongs to the wife absolutely, and independent of her husband or his creditors. As a distributee under section 349, she takes subject to debts, and her interest can be ascertained only upon final settlement of the estate. This subject is discussed fully by BRACE, P. J., in Weindel v. Weindel, 126 Mo. 640. In that case it was asserted that a wife who had divorced her husband for his fault became entitled upon his death to a child's share in his personalty under this same statute. Reliance was placed upon section 359, Revised Statutes 1909, which provides that a woman who has been divorced from her husband for his fault shall not thereby lose her dower. It was contended that the child's part allowed to the widow was dower, and, therefore, under the provisions of section 359, was not lost to her by the divorce decree. It was held that the word "dower" in section 359 did not embrace the share in the personal estate given by section 349. By the same reasoning applied by Judge BRACE in the Weindel case we must hold that the word "dower" as used in the sections providing for the admeasurement of dower does not include the interest in the personalty which appellant is claiming. The distinction between dower proper and the so-called dower in personalty is clearly pointed out by VALLIANT, P. J., in Ferguson v. Gentry, 206 Mo. 189. In Bryant v. McCune, 49 Mo. l. c. 547, Judge BLISS says: "The term 'dower' is sometimes applied to any interest in the estate of the husband given by law; and Judge SCOTT, in Hastings v. Myers' Admr., 21 Mo. 519, seems to use it in this

sense, but it properly refers to the interest of the widow as such in his lands.''

We therefore conclude that the statutory provisions for the admeasurement of dower do not apply to personalty. The claim for a child's share must be presented in the probate court. The amount of this share cannot be ascertained until final settlement; hence, where an estate is still open, any proceeding to secure this share must involve and depend upon a final settlement. The appellant recognized this, and proceeded properly by motion in the probate court to demand a final settlement and distribution. The nature of this proceeding cannot be changed by calling it an action for the assignment of dower. Under section 349, the widow is entitled absolutely to a share in the personal estate of her husband equal to the share of his child. She thus becomes a distributee, and as such stands in the same relation to the personal estate as does the child, and manifestly is entitled to the same remedies to enforce her rights. In Hastings v. Myers' Admr., 21 Mo. 519, this court says, ''As to personalty, we see no difference between the interest of a widow in her deceased husband's estate and that of any one of his distributees.'' This interest is to be ascertained upon final settlement of the estate, and after a full accounting by the administrator, and then an order of distribution. To secure such accounting, settlement and order of distribution, the appellant filed in the probate court her motion therefor. There is no pleading required to such a motion. There is no provision for a jury trial thereon. It is not contended that appellant was entitled to a jury trial in the probate court. The probate court heard the evidence introduced for and against the motion, decided that the appellant was not the widow of the deceased, and denied her motion, whereupon she appeals to the circuit court, and when the cause comes on for trial

*de novo* demands a jury. Appellant has cited no authority for this contention.

At common law a wife had no rights in the personalty of her husband; hence no right of trial by jury can be based on the common law. Nor will it avail to appeal to the Constitution. Under section 28 of article 2 of that instrument, the right of trial by jury is limited to the right "as heretofore enjoyed." We have recently decided that this clause refers to the right of trial by jury as it existed prior to the date when the Constitution was adopted, namely, 1875. [State ex rel. v. Holtcamp, 235 Mo. 232; King City v. Duncan, 238 Mo. 513.]

It does not appear that in cases like this the right of trial by jury existed before 1875. It was not given by the common law. There is no statute granting it. We have ruled above that the statutes providing for admeasurement of dower in lands in the circuit court do not apply to the widow's interest in the personalty. The uniform unbroken practice in this State has been to try all controversies growing out of final settlements in the probate court, and concerning the widow's rights in personalty, by the court without a jury. [Hastings v. Myers' Admr., supra; McFarland v. Baze's Admr., 24 Mo. 156; Hayden v. Hayden's Admr., 23 Mo. 398; Bryant v. McCune, 49 Mo. 546; Cummings v. Cummings, 51 Mo. 263; Dowry v. Bauer, 68 Mo. 155; In re Davis, 62 Mo. 450; Booker v. Armstrong, 93 Mo. 49; Myers v. Myers, 98 Mo. 262; Hitchcock v. Mosher, 106 Mo. 578; Glover v. Holliday, 109 Mo. 108; Clark v. Bettelheim, 144 Mo. 258; In re Estate of Meeker, 45 Mo. App. 186; In re Estate of Danforth, 66 Mo. App. 586.]

In many of the cases just cited the controversy arose over the claim for widow's allowance under section 116, which, as was suggested by BRACE, P. J., in Weindel v. Weindel, supra, makes a provision for the widow possessing more of the attributes of dower than

her share in the personalty under section 349, inasmuch as it is not subject to debts.

It is obvious that a proceeding which involves an accounting from the beginning of the administration is not suited to a jury trial. Apt discussion on this point will be found in Schooler's Estate v. Stark, 73 Mo. App. 301; In re Meeker's Estate, supra, and in Pearson v. Haydel, 87 Mo. App. 495. The paper filed by plaintiff in the probate court is not a petition instituting a suit. It is merely a motion filed in proceedings pending in that court, and, in the absence of a statute to the contrary, is to be considered and passed upon by the court as are motions generally.

II.   Defendant, over the objection of plaintiff, read in evidence the deposition of Thomas J. Miller, taken in the State of Washington, for the purpose of proving by said Miller that he was the man who-married plaintiff at Decatur on January 15, 1883. It was objected that as defendant claimed that Miller was the husband of plaintiff, and offered his deposition to prove such fact, Miller was, on defendant's theory, incompetent. At the same time plaintiff denied that Miller was or ever had been her husband. The court was not called upon to pass on this proposition, inasmuch as, in connection with the offer of the deposition, the defendant introduced in evidence a decree of divorce from plaintiff which had been granted to said Miller by the Superior Court of the State of Washington subsequent to the date of his deposition, and before same was offered in evidence. This decree was admitted, also over plaintiff's objection, and thereupon the court held the deposition competent, evidently upon the strength of the decree of divorce, without regard to whether it would be competent if no such decree had been granted. If, therefore, the decree of divorce was properly secured, and if it made the deposition competent, it is unnecessary to consider the ob-

jection based solely on the ground that it was offered as the testimony of the husband of plaintiff.

We will now consider the ruling on the objection to the decree of divorce.

III. Defendant offered in evidence the following decree of divorce granted to the witness, Thomas J. Miller, duly authenticated:

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON, FOR THE COUNTY OF THURSTON.

Thomas J. Miller, *alias*
  Henry Howard, Plaintiff,
      v.                                          }Decree.
Mary Moore Miller, *alias*
  Mrs. Mary Howard, *alias*
  Mrs. Mary Leafgreen, Defendant.

Now, at this time this matter coming on to be heard upon application of plaintiff herein for a decree according to the findings of fact and conclusions of law herein, and the plaintiff appearing in person and as well by his attorney, G. C. Israel, and the defendant appearing not, but still being in default herein, and it appearing to the court that heretofore this cause came on duly for trial before the court, and that at said time full jurisdiction of the defendant had been obtained herein by publication of summons, and the default of the defendant had been duly entered, and that in the absence of the defendant there appeared in said action Horatio Alling, prosecuting attorney for Thurston county, state of Washington, and the court thereupon did hear evidence and did file its findings of fact and conclusions of law.

Now, therefore, by reason of the law and the premises, it is by the court ordered, adjudged and decreed that the plaintiff, Thomas J. Miller, *alias* Henry Howard, *alias* Charlie Howard, be and he is forever divorced from the defendant, Mary A. Miller, *alias* Mary A Moore, *alias* Mary Moore Howard, *alias* Mary A. Leafgreen, and the bonds of matrimony now existing between the plaintiff and defendant be and the same are annulled and forever set at naught.

It is further ordered, adjudged and decreed that all real and personal property acquired by said plaintiff subsequent to the year 1885 be and the same is declared his separate property and estate, divested of any interest therein of, in or to the same by said defendant.

It is further ordered that neither the plaintiff or defendant shall contract marriage or enter into a marriage with any third person in or out of the State of Washington for a period of six months from and after the signing of this decree.

Done in open court this 23rd day of January, A. D. 1906.

                    O. V. LINN,
                        Judge.

To the introduction in evidence of this decree plaintiff objected "on the ground that the court rendering the decree never acquired jurisdiction over the person of the plaintiff herein; that it is not shown that the parties were married in Washington, or that the plaintiff in this suit ever had a residence in the State of Washington, and because it shows that the service upon which the decree was rendered was constructive service, and because the evidence already before the court shows that the parties in this case, whether it be Miller or Howard, were married in the State of Illinois, and because plaintiff here was not a party to this action, the court never having acquired legal jurisdiction over the person of plaintiff; and because to introduce this record now would be in violation of her constitutional rights under that provision of the Constitution, section 1 of the 14th Amendment to the Constitution of the United States, which forbids the taking from her without due process of law her property rights, and in violation of section 1 of article 14 of the Constitution of the United States, and in violation of the written opinion of the Supreme Court of the United States rendered in the case of Haddock v. Haddock, reported in volume 201 U. S., page 562; and in violation of section 30 of article 2 of the Constitution of Missouri."

Later, before the decree was admitted, plaintiff interposed this additional objection:

"In addition to the objections made heretofore to the admission of the decree, it is further objected to on the ground that the decree is incomplete, in that the record of said cause is not present, and that from the face of said decree it does not appear that the Superior Court of Thurston county, State of Washington, is a court of general jurisdiction, or that its jurisdiction extends beyond the limits of said county, or that it acquired any jurisdiction over the person of plaintiff."

The objection to the jurisdiction of the Washington court over the subject-matter was fully met by the introduction in evidence of a statute of that State defining the jurisdiction of the Superior Court.

The objection based on the non-residence of plaintiff in Washington is founded upon the decision of the U. S. Supreme Court in Haddock v. Haddock, 201 U. S. 562, which holds that the full-faith-and-credit clause in the Federal Constitution cannot be invoked to *compel* a State to recognize as valid a divorce granted by a sister State upon constructive service by publication, where the defendant in the suit had never had a matrimonial domicile in the State granting the divorce. That case does not hold that such decree cannot be recognized as valid in another State. On the contrary, the opinion says (l. c. 605): "Without intimating a doubt as to the power of the State of New York to give to a decree of that character rendered in Connecticut, within the borders of the State of New York and as to its own citizens, such efficiency as it may be entitled to in view of the public policy of that State, we hold that the decree of the court of Connecticut rendered under the circumstances stated was not entitled to obligatory enforcement in the State of New York by virtue of the full-faith-and-credit clause."

In the course of the opinion the court cites Missouri as holding to the policy of recognizing the validity within its borders of such decrees, and cites as authority Gould v. Crow, 57 Mo. 200, and Anthony v. Rice, 110 Mo. 223. The ruling of the two cases just cited has never been questioned in this State. It is our policy to recognize the validity in this State of such foreign divorces. There is nothing in the Haddock case which in the slightest degree seeks to control our policy in this regard. This policy violates no rights under either the State or Federal Constitution.

Concerning the objections that the decree fails to show due service, and is also incomplete, absent the entire record, the decree states in effect that legal service was had by publication. This makes a prima-facie case of due and legal service. It must also be presumed that the court proceeded in due course, and by right, upon a sufficient record. In the recent case of Lieber v. Lieber, 239 Mo. 1, we approve this from 13 Am. & Eng. Ency. Law (2 Ed.), p. 995: "Where reliance is placed on a foreign judgment rendered by a court of record and of general jurisdiction the presumption is that such court had authority to render the judgment in question, and that the necessary jurisdiction was acquired properly."

In the light of such presumption, the point made by plaintiff that it does not appear that the statutes of Washington authorized constructive service by publication, is not well taken. Moreover, this exact question is decided adversely to plaintiff's claim in Williams v. Williams, 53 Mo. App. l. c. 620 upon grounds which we fully approve.

For the purpose for which this decree was offered in evidence, namely, to establish the status of Miller as a witness, we think the record was prima-facie sufficient and valid.

IV. Did the trial court err in holding that the divorce removed the alleged matrimonial disability of Miller to testify at the time his deposition was taken? In other words, if the witness when he gave his deposition was incompetent to testify because he was at the time the husband of plaintiff, does the subsequent removal of the disability by a decree of divorce, granted before the deposition is offered to be read in evidence, make the deposition competent?

Our statute, section 6411, Revised Statutes 1909, provides that depositions "may be read and used as evidence in the cause in which they shall have been

taken, as if the witnesses were present and examined in open court on the trial thereof.'' That is to say, the deposition becomes, as it were, the witness. The competency of a witness, in regard to the objection made here, is to be determined by his status when put upon the stand. If he is the husband of plaintiff he cannot testify. He is not disqualified because of the fact that he has been plaintiff's husband, except as to confidential communications.

In 13 Cyc. 994, the rule is thus stated: ''As a general rule, the status of the witness at the time of the trial governs the question of his competency; for, in contemplation of law, the deposition itself is the witness, and the witness is presumed to testify when the deposition is used.''

In Messimer v. McCray, 113 Mo. 382, we said: ''The competency of a witness to testify can only be determined when his deposition is offered upon the trial, at which the deposition stands for the witness. If he is not competent under the law as it then exists his deposition cannot be read, although he may have been competent under the law as it existed when it was taken. The parties have no vested right in the evidence of a witness. [O'Bryan v. Allen, 108 Mo. 227.]''

In St. L., I. M. & S. Railway Co. v. Harper, 50 Ark. 159, a deposition was taken when the witness was competent. Before it was offered in evidence the witness became incompetent by reason of his conviction of an infamous crime. The deposition was rejected. The court says: ''The status at the trial governs the question of competency (Weeks on Depositions, sec. 515; Fielden v. Lahens, 14 Abb. Pr. 48; Oliver v. Moore, 12 Heisk. 482; Webster v. Mann, 56 Tex. 119), for, in contemplation of law, the deposition is the witness (Jones v. Scott, 2 Ala. 58), and the witness is presumed to testify when the deposition is used (Park

v. Lock, 48 Ark. 133; Quick v. Brooks, 29 Ia. 485; Fagin v. Cooley, 17 Ohio Rep. 51).''

In the cases of Long v. Martin, 152 Mo. 668, and McCloskey v. Publishing Co., 163 Mo. 22, we held that a divorce removed the disability of a wife as a witness. To the same effect is Toovey v. Baxter, 59 Mo. App. 470.

That the competency of a husband or wife as a witness depends upon whether the relation exists at the time of the trial (except as to confidential communications), is evident when we consider the ground upon which the rule rests. Mr. Greenleaf says it rests upon the notion of the untrustworthiness of a spouse testifying; that each will be likely to favor the other; also to protect the sanctity of the marriage relation on grounds of public policy. [1 Greenleaf on Ev., sec. 333.] He also says that divorce destroys the incompetency. [Ibid., 337.]

In view of the foregoing, it is obvious that the court did not err in its ruling on this proposition.

V. Plaintiff was married on the 15th day of January, 1883, at Decatur, Illinois, to a man whose name appears in the marriage license as "Henry Howard," and who wrote his name as Henry Howard in the return of marriage to the county clerk, which was signed by both bride and groom on said 15th day of January. Plaintiff claims that this man whom she married on that day was Laclede J. Howard. The defense not only denies this claim, but introduced evidence tending to prove that the man whom plaintiff married that day, under the name of Henry Howard, was in fact one Thomas J. Miller. In support of this defense the defendant introduced, over plaintiff's objection, several pages of a book of entry of the Evans-Howard Fire Brick Company, of which company Laclede J. Howard was president in 1883, and particularly an order for goods which purported to have been entered

therein on the 15th day of January, 1883, in the hand-writing of Laclede J. Howard. It was shown in evidence that this book was kept at the time, and had since remained, in the office of the brick company in the city of St. Louis; that it was kept for the purpose of entering orders therein; that this particular entry occupied its proper place for that date between other similar entries of orders received for goods preceding and following it; that it was written by Laclede J. Howard in the performance of his duty to make such entry, in the usual course of his business; that it was made in St. Louis; that it was customary to enter orders in this book on the date when received. Defendant also introduced in evidence, over plaintiff's objection, a book identified as the regular minute book of the company, containing the record of meetings of stockholders and directors. This book showed the regular annual meeting of the stockholders held in St. Louis on January 16, 1883, and a meeting on the same day of the board of directors. The evidence showed that the minutes of these meetings were entered in the book in the handwriting of Laclede J. Howard, and signed by him as president and secretary. These minutes state that he was present at the meeting and give the names of the others present. The minutes of these meetings appear under date January 16, 1883, and in regular order with reference to other similar meetings. These entries were introduced for two purposes; first, to prove that Laclede J. Howard was not in Decatur on January 15, 1883, the date of the marriage, and, second, to prove the handwriting of Laclede J. Howard for the purpose of comparison with the signature "Henry Howard" upon the marriage return. The entries were conceded to be competent for the latter purpose, but it was objected that they were not competent evidence to show that Laclede J. Howard was in St. Louis on January 15 and 16, 1883. This objection was overruled; and the question is presented

whether such entries were competent evidence of the whereabouts of Laclede J. Howard on the dates mentioned.

The law is well established that entries made by a person in the ordinary course of his business are, in case of his death, admissible at least for the purpose of showing where such person was at the date which such entry bears. This proposition is in the nature of an exception to the rule against hearsay testimony, and is based upon the fact of necessity, and also upon the uniform reliability of such entries.

In Nicholls v. Webb, 8 Wheat. 326, the U. S. Supreme Court says in a case where the book entry of a deceased notary was received to prove a protest: "We think it a safe principle that memorandums made by a person in the ordinary course of his business, of acts or matters which his duty in such business requires him to do for others, in case of his death are admissible evidence of the acts and matters so done."

A full discussion of this question is found in 2 Wigmore on Evidence, p. 1880. See, also, Clark v. St. James Church, 21 Hun, 98, a case quite like this as to the facts and the point involved.

The record entry in the minute book of the directors' meeting has less probative force than the entry in the order book. It is, of course, quite possible that the entry of the minutes in the book might occur subsequent to the actual date of the meeting. Still, we think the distinction goes rather to the weight than to the competency of the evidence. It is the duty of a corporation to keep a record of the minutes of the meetings of its stockholders and directors. Such minutes should show the date when the meetings were held, and also who were present. It was the duty of Laclede J. Howard as secretary to prepare and enter such minutes in the record. The testimony shows that the minutes of the meeting purporting to be held Jan-

uary 16, 1883, were written by Laclede J. Howard into the regular minute book, and in regular order as compared with other entries therein. These minutes state the names of those present, including that of Laclede J. Howard. The testimony shows that all of those named as present at that meeting were dead at the time the record was offered in evidence. Under these circumstances we think the evidence was competent as a circumstance tending to prove that Laclede J. Howard was present in St. Louis at a meeting of the board held January 16, 1883. This record furnished the best evidence obtainable. The same reasons that sustain the introduction of regular book entries, namely, death of the entrant, generally reliability of such entries, and that such was the best evidence obtainable, support the competency of the record entries, notwithstanding the inferior probative value of such record entries as compared with that of the entry in the order book. None of this evidence is conclusive. It is subject to contradiction and impeachment. It is testimony to be weighed with all the evidence and circumstances in the case.

VI.  As plaintiff does not contend in this court that there is not sufficient evidence to support the judgment of the circuit court, it is unnecessary to discuss the evidence in detail. We have, however, read it, and are convinced that the judgment below is right. Considering the uncontroverted facts in the case, the story told by the plaintiff is inherently improbable. The weight of the testimony overwhelmingly preponderates for the defense. Even if all the testimony objected to were eliminated, there would remain enough to amply sustain the finding of the court against the plaintiff.

The judgment is affirmed. *Kennish* and *Brown, JJ.,* concur.